Staples, J.
It is well settled law in this state, that where there are several counts in an indictment, and the jury find the accused guilty upon one of the counts, saying nothing as to the others, the verdict operates as an acquittal upon the counts of which the verdict takes no notice, and the court should enter a judgment accordingly. Lithgow v. Com., 2 Va. Cases 297; Page v. Com., 9 Leigh 683; Canada’s case, 22 Gratt. 899; Page’s case, 26 Gratt. 943. It may be regarded as equally well settled, that in such case if the accused applies for and obtains a new trial, he does not thereby waive the advantage of the acquittal thus obtained. But he must be tried, and can only be tried *954 again on the count on which he was convicted, and' not on the counts of which he had been before acquit- ' ted. The reason is, that the accused having been rightfully acquitted of one or more of several offences which have been joined in the said indictment, he cannot again be brought into jeopardy for these alleged offences, because, having been wrongfully convicted on another, he seeks and obtains redress against the wrong-done him.
The attorney general did not seriously controvert this doctrine. He maintained, however, that the rule applied only in those cases where the new trial is granted, because the verdict is against evidence; and that it had no application when the new trial is-granted on account of a defective verdict, which is in effect a mistrial. In other words, if the finding is so-defective or uncertain that legally no judgment can be pronounced thereon, it is a mere nullity, and the accused is precisely in the same condition as if there had been no trial; the whole case being again open for investigation upon its merits. The learned counsel cited no authority for the supposed distinction in the-two cases, nor have we been able to find any that sustains it.
It would seem to be clear, that whether the verdict be set aside because it is defective, or because it is contrary to evidence, the legal result must be the same. If, in the first case, the verdict is not severable, but is. so entire, that to vacate the conviction necessarily carries with it the acquittal, the like consequences must ensue, whatever may be the ground upon which the verdict may be set aside. On the other hand if, where-the finding is set aside because it is against evidence, the new trial is to be construed as applying only to the offence of which the accused is convicted, and not to. *955 that of which he was acquitted, it must have the same effect where the verdict is set aside, because it is uncertain or otherwise defective. In neither case can the accused be put twice in jeopardy for the same offence as the price of his relief against an erroneous verdict. The case of Marshall v. Commonwealth, 5 Gratt. 663, is directly in point. There the indictment contained two counts, the first for malicious stabbing, the second for unlawful stabbing. The jury found the defendant not guilty under the first count, but “ guilty of unlawful stabbing,” and fixed the term of his confinement in the penitentiary at five years; and judgment was entered accordingly. Upon a writ of error to the general court the judgment was reversed, upon the ground that the verdict was defective. But the general court in setting aside the verdict directed a new trial to be had only on the second count, upon which the defendant had been convicted. This decision is conclusive of this branch of the question. In the present case, upon the trial of the first indictment, the jury found the defendant “guilty of unlawful assault,” and fixed the term of his imprisonment in the penitentiary at two years. As this verdict, while it imposed the punishment prescribed for a felony, failed to find the intent necessary to constitute a felony, it was very properly set aside by the court. It is, however, manifest that the jury intended to find, and have in effect found a verdict of acquittal upon so much of the indictment as charges a malicious assault. Upon that part of the finding a judgment of acquittal ought to have been entered, and the new trial confined to the allegation of an unlawful assault, with intent to maim, disfigure, disable and kill. This is the necessary result of the doctrine in Marshall’s case, unless there be something *956 in the form of the indictment requiring the application of a different principle.
In Marshall’s case, as has been seen, the indictment contained two counts, one for malicious, the other for an unlawful assault. In the present case, the first indictment contained two counts, both, however, for malicious assault; the only difference being that one of the counts sets forth the instrument with which the injury was inflicted. Both counts must, therefore, be treated as one, so far as the grade of the offence is involved. It has been held in several cases that the same rules do not apply to a trial and acquittal upon an indictment with one count that govern in a trial upon an indictment with several counts. Thus, in the State v. Behimer, decided by the supreme court of Ohio, 20 St. R. 572, the indictment contained a single count for murder in the first degree. The prisoner being convicted of murder in the second degree, obtained a new trial. The question arose, whether upon such new trial the investigation should embrace all the charges in the indictment, or be confined to murder in the second degree. The court was of opinion that the verdict was severable only where there is a conviction or acquittal on several counts for different and distinct offences; and where there is but one defendant, and in fact but one offence, the verdict is entire, and a new trial reopens the whole case upon its merits. The cases of Hale v. Commonwealth, 2 Hill (S. C.) R. 273; Morris v. State, 1 Blackf. R. 37; United States v. Harding, 1 Wallace Jr. R. 127, hold the same doctrine.
In Livingston’s case, 14 Gratt. 592, upon an indictment containing a single count for murder, the accused was convicted of voluntary manslaughter, and the *957 term of his imprisonment in the penitentiary fixed at one year. This court reversed the judgment for errors committed by the lower court in the progress of the trial. The question was presented, whether upon the second trial the accused might be tried and legally convicted of murder, or whether the charge to the jury was to be so modified as to limit the finding to the offence of manslaughter. Judge Daniel took the ground that a party who has been erroneously convicted of manslaughter, and who has appealed to this court for redress, had the right to have his wrong remedied, without being put in jeopardy for a higher offence of which the jury has found the prisoner not guilty. He said, if there had been one count for murder and another for manslaughter, and a verdict of guilty on the latter count, taking no notice of the former, it would seem to be clear, under the authority of the cases, the cause would have to be sent back for another trial for manslaughter only. He asked, what difference it made that the verdict had been rendered on a single count for murder, instead of two counts, one for murder and the other for manslaughter. In either case, the verdict of manslaughter was as much an acquittal of murder as a verdict pronouncing his entire innocence could be. In support of this view, he cited a number of cases. Slaughter v. State, 6 Hump. R. 410; Hurt v. The State, 25 Miss. R. 378; Brennan v. The People, 15 Illi. R. 572; The People v. Gilmore, 4 Cal. R. 376; Jones v. The State, 13 Texas R. 168. He said he had seen no case holding a contrary doctrine, except the case of the United States v. Harding, 1 Wallace Jr. 127, in the circuit court of the United States. In the course of his opinion Judge Daniel referred to the cases of Ball v. Commonwealth, 8 Leigh 726, and Gwatkin’s case, 9 Leigh 678, in both of which *958 the accused was convicted of murder in the second degree. A new trial was granted; but the judgment of the general court in each case, directing a new trial, was general in its terms. In neither case was any question raised as to the character of the order to be made upon the new trial, nor does it appear the matter was in any manner brought to the attention of the court. The cases were, therefore, in judge Daniel’s opinion, not entitled to the weight of an express adjudication of the point involved.
The other judges sitting with Judge Daniel in Livingston’s case, without expressing any opinion upon the question, were in favor of remanding the cause for a new trial to be had on the indictment as it stands, and without any change in the usual charge to the jury-
The question must, therefore, be considered as still unsettled in Virginia. The decision of the general court in Ball’s case and in Gwatkin’s case cannot be regarded as binding authority in the present case, not only for the reason already stated, that the question was not raised, but for another suggested by Judge Daniel, growing out of particular rules only applying to murder in the second degree. What is said by Judge Daniel on this subject may be seen by reference to his opinion.
Whatever may be the just rule when there is a conviction of murder in the second degree, which we are not called on to discuss, it is generally conceded that when the indictment contains two counts, one for murder and one for manslaughter, which are distinct offences, if the accused is acquitted of murder and convicted of manslaughter, and a new trial is granted him, he can only be tried the second time for the *959 offence of which he was convicted, and not for that of which he was acquitted.
It will be seen, therefore, that the whole argument turns upon a supposed distinction between an indictment which contains a single count, and an indictment •containing two or more counts. It is difficult to believe the idea could ever be entertained that the most valued rights of the citizen are to be made to depend upon the number of counts a prosecuting attorney may put in his indictment. The doctrine that liability to, or exemption from, punishment rests upon such a tenure in any case, illy accords either with the humane spirit of the law, or those constitutional guarantees which define and protect individual rights. If the ■accused has been fairly acquitted of any offence, he ought not to be tried for it again, whatever may be the form of the proceeding against him. If there be anything valuable in the principle that “ no man can be ■twice put in jeopardy for the same offence,” its efficacy should not be impaired by distinctions so technical and unsatisfactory. In most of the states this principle is enforced by express constitutional, provision. The Virginia constitution, however, contains no such provision; but with us the maxim has all the •sanctity of constitutional enactment, and is viewed by the courts with the greatest favor. If a party improperly convicted of an offence can only have the conviction set aside upon the terms of submitting to a greater wrong; if an error can only be corrected at the price of surrendering a great privilege, and all this because the government has pursued its accusation ■one way, instead of another, the most valued rights rest upon a very feeble foundation.
In the State v. Martin, 30 Wisc. R. 216, 11 Am. Rep. 367, Judge Cole, in delivering the unanimous *960 opinion of the court said: “A person already convicted may waive the constitutional protection against a second prosecution, and ask for a new trial to relieve himself from the jeopardy he is in. And when he does so, what ought to be the extent of his application? Is it to expose himself to the possible conviction of a charge of which he has been acquitted, or is it to relieve himself of one of which he has been convicted? It would seem that a bare statement of the proposition was sufficient to furnish the proper answer. The motion for a new trial could only properly apply to- the crime of which he has been convicted. The verdict for the purpose of determining for what offence the defendant may constitutionally be a second time tried, must be treated as divisible in its nature.” These observations were made with reference to an indictment containing a single count for murder. Their justness and soundness must be conceded by all. If any other rule were established, as has been well said by a learned judge, no man will subject himself to the risk of being hung for murder, when convicted of manslaughter, and he will prefer, in many instances, although innocent, to rest under the conviction rather than to encounter the dangers of a second trial. In every case where the timid and unfriended are involved, this will be found to be the result; and in times of high popular excitement, those, who may be bold in consciousness of innocence will hesitate long before they assume so great a risk and pay so fearful a premium for the privilege of asserting their innocence. Murray, C. J., in the People v. Gilmore, 4 Cal. R 376.
In 1 Bishop on Crim. Law. sec. 676, in speaking of the doctrine “that no man is to be brought into jeopardy more than once for the same offence,” the author *961 proceeds to say: “If, therefore, the verdict which finds a prisoner guilty of part of the charge against him, finds him not guilty of another part—as, for example," guilty on one count of the indictment, and not guilty on another count; or where there is but one count, guilty of manslaughter, and not guilty of murder—and a new trial is granted him, he cannot be convicted, on the second trial, of the matter of which he was acquitted on the first.” The same doctrine is laid down by Wharton, who declares, upon a review of the authority, “ The true view, however, is that when the major and minor offences are together before the jury, the defendant’s conviction of the second offence is an acquittal of the major, and is a bar to the further prosecution of the major.” 1 Wh. C. Law, sec. 556. In support of this position, the author cites decisions of the supreme courts of California, Georgia, Illinois,. Iowa, Missouri, Mississippi, Tennessee, and Wisconsin, which may be seen by reference to his work.
• The main argument generally relied on by those who take a different view of this question is, that a verdict is an entirety, and if that part of it finding the defendant not guilty be set aside, the part acquitting ■ him is also necessarily set aside. It might, however, with equal propriety, be said that a verdict acquitting some of the defendants is an entirety; but there is no pretense for saying if it is set aside as to those convicted, it must share the same fate as to those acquitted. And so when the indictment contains several counts, it may be said the verdict is entire; and yet there is no question but that in such ease the verdict is divisible. An indictment for murder is, in legal contemplation, an indictment for every offence of which the accused may be convicted under it. It is to be treated, for all practical pur *962 poses, as an indictment for manslaughter, as much so as an indictment for murder. The reason is, that ' it is not necessary to find all the allegations with reference to the attendant circumstances, but only so much of them as constitute a substantial offence charged in the indictment. The jury, in passing upon the homicide, may negative the averment of malice aforethought, and convict of manslaughter. In such case the lesser offence is merged in the greater. When, therefore, upon a conviction of the offence of manslaughter, the accused obtains a new trial, he is, in effect, tried the second time upon the indictment, as it is, precisely as though the indictment contained a count for manslaughter in addition to the count for murder.
Suppose the jury find the defendant not guilty of murder, in express terms, but guilty of manslaughter. This is, in effect, two findings—a verdict of acquittal of one offence, and a verdict of guilty of the other. If the court sets aside the verdict of conviction, the verdict of acquittal remains. The principle is precisely the same, as this court has repeatedly held, when there is a verdict of conviction as to one of the counts, and nothing is said as to the others. When the jury say the defendant is guilty of manslaughter, they affirm, and, in effect, find, by irresistible implication, he is not guilty of murder. What difference can it make in such case, whether there be two counts or one count, or whether there be two express findings, or one express and the other implied by law. In either case there is no difficulty in treating the verdict as several, with respect to the different offences. In either case, the granting of a new trial, on conviction of one offence, has no sort of connection with the verdict of acquittal of the other offence, and the latter- *963 may well be allowed to stand and have effect, though the former should be set aside. It is said, however, that if the defendant is convicted of manslaughter, for example, and sentenced to imprisonment for one year, upon the second trial he máy be convicted and sentenced for five yeai’s; and thus he may be subjected to greater punishment on the second trial than is awarded on the first. This is undoubtedly true. But the conclusion intended to be deduced from it proves too much. Upon an indictment containing two counts —one for murder and the other for manslaughter—if the defendant is convicted of manslaughter, and acquitted of murder, it is conceded he can be tried again only for manslaughter; and yet his second conviction may result in a more extended imprisonment than the first. And so in Marshall’s case, the general court directed a new trial upon the second count; and yet the term of imprisonment for the offence, upon the second trial, might have exceeded what the jury awarded on the first trial. The truth is, the maxim that a man is not to be put twice in jeopardy for the same offence, is applied in reference to the nature of the offence, and not to designate the quantum, of punishment.
It must be borne in mind, that in the case supposed the accused is not acquitted of the offence in respect to which he asks a new trial, but convicted. In applying for a new trial, he necessarily consents again to be tried for the same offence, with all its incidents and consequences. To this end his waiver operates, but no further.
Thus far the question has been considered with reference to prosecutions for' homicide, because the eases decided and the principles involved apply directly to the case in hand. With respect to the *964 latter, however, there are considerations which do not apply to the former. While the practice has always been, in this state, to frame indictments for murder with a single count, it was otherwise until recently with respect to indictments for malicious assaults. Under the Code of 1819, the course uniformly pursued was to insert two counts—the one for malicious and the other for an unlawful assault. At the revisal of 1849 a change was introduced, so that the commonwealth may now proceed upon a single count for mar lieious shooting, stabbing or cutting, with intent to kill, and under it may convict the accused of the of-fence charged,' or of unlawfully doing such acts, or, indeed, of any other offence, felony or misdemeanor, which is substantially charged in the indictment. Canada’s case, 22 Gratt. 905. The object of this change in the law was to save the trouble of several counts, and to avoid the delays and mischief arising from the acquittal of the defendant upon mere variance between1 the allegations and proofs. It can hardly be supposed it was the design of the legislature, even if it were competent to do so, to deprive the accused of any important rights which appertained to an indictment framed under the old law. If, upon an indictment containing two counts, the defendant, being convicted of the less offence, could not again be tried for the greater, he ought not to be deprived of that privilege, because, as a matter of convenience, the commonwealth may now proceed upon a single count in an indictment.
The courts would hesitate long before giving construction to a statute so utterly at variance with the rights of the citizen and the well regulated principles of criminal jurisprudence.
The attorney general has, however, argued that the *965 petitioner is not entitled to the benefit of the rule in •question, because the indictment upon which he was first tried was quashed with the consent of the petitioner. He is thus precluded from relying upon anything done under that indictment. In the first place, it- does not appear that the petitioner gave his consent that the indictment should be quashed. It is very true he made no objection; he was not required to do so. All that he did was to call the attention of the court to the fact, that the indictment had become so mutilated he could not be safely tried upon it. The court, having inspected the indictment, was of the same •opinion. Thereupon the prisoner, by his counsel, moved the court that he be discharged from custody; which motion the court overruled; to which ruling ■the prisoner excepted. The commonwealth’s attorney then moved the court to quash the indictment, because of said mutilation; which motion was sustained, and the indictment quashed, and the prisoner remanded to jail to await further action of the grand jury. This statement is sufficient to show that the prisoner did not give his consent to a single step taken by the •court. It was for the court, and not the petitioner, to determine what course was to be pursued when the condition of the indictment was ascertained. But ■even if it appeared that the petitioner had agreed that the indictments should be quashed, such agreement •could not be construed beyond a simple consent to a new indictment as a substitute for the former. Upon such new indictment the petitioner would have every -right which justly belonged to him under the first. It ■cannot be supposed he thereby intended to surrender the protection of the acquittal already obtained upon the previous trial. Such a construction would be ¡grossly unjust to the petitioner, as well as to the court *966 and the attorney for the commonwealth. It is obvious-that the sole purpose was to place the petitioner in the-same position he would have occupied if the indictment had not been so mutilated; to furnish clear and unmistakable evidence by the record, of the offence with which he was charged, and for which he was to-be tried. If he was fairly acquitted, on the first trial, of the offence of malicious wounding, he could never be tried for it again, whatever might be the fate of the indictment. Although the indictment is out of the-way, the verdict of acquittal still remains.
The petitioner, however, insists that he could not be legally tried under the second indictment, because he-had once been tried under another indictment for the-same offence, and he ought to have been discharged from custody upon quashing the first indictment.
This position is equally untenable with that of the attorney general. The petitioner was acquitted of a malicious assault, but of no other offence charged in the indictment. He was convicted of an unlawful assault with the intent alleged. Having moved for a new trial, he is conclusively presumed to waive any objection to being put a second time in jeopardy for-that offence. All the authorities concur upon this-point. The petitioner was therefore liable to be tried for any and every offence of which he had not been acquitted on the first indictment. It was a matter of' no moment whether such trial took place on the first or on a new indictment. After the new trial granted, the commonwealth might have entered a nolle prosequi' in the case, and have proceeded on a new indictment;, or even while the first was pending, a second indictment for the same offence might have been found, because the mere finding of one indictment is no bar to another, even for the same offence. The accused can *967 not be tried on both, but the commonwealth may elect on which it will proceed; the better practice however being to withdraw the first, and proceed to trial on the second. In Gibson’s case, 2 Va. Cases 111, it was held that the discharge of a jury, after they have rendered a verdict against a prisoner, but which verdict is adjudged to be a nullity, because it was not duly perfected, and therefore set aside as insufficient, is no bar to a prosecution under the same or a new indictment. That ease would seem to be conclusive of the question here.
The only remaining assignment of error to be noticed is, that the petitioner had not been tried before a justice, nor had any preliminary examination of the offence for which he was indicted. It appears from the certificate of the county judge that, previous to the finding of the first indictment on the 22d of July, the petitioner was arrested under a warrant of a justice, was examined for the offence and committed for trial, and two days thereafter an indictment was found against him. The petitioner having thus had his preliminary examination before the finding of the first indictment, and that indictment having been quashed under the circumstances already detailed, he was not entitled to another examination before a justice upon the finding of the second indictment. The latter was for the same offence as charged in the former indictment, and as already stated was intended as a substitute for it. This assignment was therefore not well taken.
But for the error already mentioned, I am of opinion the judgment of the county court is erroneous, and should be reversed, the verdict of the jury set aside, and the petitioner awarded a new trial. Upon such new trial he may be convicted of unlawfully cut *968 ting, wounding, beating with intent to maim, disfigure, disable and kill, and sentenced to such term of imprisonment as is prescribed by the statute, in the discretion of the jury, whether the same shall or shall not exceed the period ascertained by the first verdict; or he may be convicted of any lesser offence substantially charged in the indictment. Canada’s case, 22 Gratt. 899.
But it appearing that the petitioner is now in the penitentiary, in execution of the said judgment against him, it will be necessary to have him brought before this court upon a writ of habeas corpus, and committed to the sheriff', of this county, to be by him conveyed to the jail of Washington county, for the purpose of being tried again for the offence aforesaid, in conformity with the course pursued in Barber’s case, 2 Va. Cas. 122, and Jones’ case, 20 Gratt. 857. A writ of habeas corpus is therefore awarded accordingly, directed to the superintendent of the penitentiary, commanding to bring the prisoner before this court, &e.
Christian and Burks, Js., concurred in the opinion of Staples, J.
Moncure, P., dissented.
Judgment reversed.