# TRONO v. UNITED STATES.

## ERROR TO THE SUPREME COURT OF THE PHILIPPINE ISLANDS.

No. 34.    Argued October 31, 1905.—Decided  December 4, 1905.

Plaintiffs in error were tried for murder in the court of first instance in the
Philippine Islands and were acquitted of the crime of murder and con-
victed of the crime of assault and were sentenced to six months' impris-
onment and a fine. They appealed to the Supreme Court of the Philip-
pine Islands, which reversed that judgment and found them guilty of
homicide and sentenced them to various terms from eight to fourteen
years' imprisonment and a fine.   On a writ of error seeking to review
the judgment on the ground that the action of the Supreme Court of the
Philippine Islands amounted to putting the accused in second jeopardy,
*Held,* that:

There is a vital difference between an attempt of the Government to review
a verdict of acquittal in the court of first instance, and the action of the
accused in himself appealing from a judgment which convicts him of
one offense while acquitting him from the higher one charged in the in-
dictment.   *Kepner* v. *United States,* 195 U. S. 100, distinguished.

Where upon the indictment of a greater offense the one accused is found
not guilty thereof but guilty of a lower offense included therein, and upon
appeal from that judgment a new trial is granted by the appellate court,
the accused can, on the new trial, be tried for the greater offense in the
indictment, and such new trial does not amount to placing him in jeopardy
a second time for the same offense within the meaning of the Federal
Constitution or of the provisions in that regard in the Philippine Act of
July 1, 1902, 32 Stat. 691.

The appeal of the accused in such case amounts to a waiver to the plea of
second jeopardy by asking that he be again tried for the offense for which
he has once been convicted and if that request be granted he must take
the burden with the benefit and go back for the new trial upon the whole
case.

*Quære,* whether the constitutional provision against second jeopardy was in-
tended to apply to a judgment under these circumstances.

In reversing the lower court and itself convicting the accused on such ap-
peal, the Supreme Court of the Philippine Islands acted within its powers,
and in ordinary procedure in the courts of that country under the act of
July 1, 1902.

THE plaintiffs in error were proceeded against in the court

of first instance of the province of Bulacan, Philippine Islands, upon a complaint accusing them of causing the death of Benito Perez "with great cruelty and evident premeditation . . . by means of blows given with the butts of guns, they coöperating one with the other." In other words, the accused were complained of as guilty of murder in the first degree.

They were tried in the court above mentioned and were acquitted of the crime of murder and convicted of the crime of assault, which is included in the crime of murder charged in the complaint, and they were therefore sentenced by the court to suffer a penalty of six months' imprisonment and to pay a certain sum to the heirs of Perez, with subsidiary imprisonment in case of insolvency.

All three of the accused appealed to the Supreme Court of the Philippine Islands from the judgment and sentence of the trial court. The Supreme Court, having heard the case, reversed the judgment of the court of first instance and convicted the accused of the crime of homicide (in substance, murder in the second degree), which is included in and is a lower degree of the crime charged in the complaint, but is a higher degree of crime than that of which the accused were convicted in the court below. Two of them (Angeles and Trono) were sentenced to fourteen years, eight months and one day, and Natividad to imprisonment for eight years and one day, and all three to the payment of an indemnity to the heirs of the deceased.

The accused have brought the case here by writ of error to the Supreme Court of the Philippine Islands, for the purpose of reviewing the judgment of that court.

*Mr. Aldis B. Browne*, with whom *Mr. Alexander Britton* and *Mr. Maurice Kelly* were on the brief, for plaintiffs in error:

In convicting plaintiffs in error of homicide after their acquittal thereof by the court of first instance the Supreme Court of the Philippine Islands placed them for the same offense twice in jeopardy, in violation of the Declaration of Rights in section 5 of Civil Government Act of July 1, 1902, 32 Stat. 691; *Kepner*

v. *United States*, 195 U. S. 100; *United States* v. *Ball*, 163 U. S. 662.

Jeopardy terminates with an acquittal by the trial court, and no further proceedings may be had in the appellate tribunal without placing the accused under a second jeopardy. This principle is now settled law and as such incorporated into the criminal jurisprudence of the Philippine Islands. When the plaintiffs in error in this case were acquitted by the court of first instance of the charge of homicide their jeopardy was ended, and they could not again be tried for that offense without being put twice in jeopardy therefor.

By appeal from the conviction of assault the accused did not waive their immunity from second jeopardy on the charge of homicide. *Hopt* v. *Utah*, 110 U. S. 574; *Thompson* v. *Utah*, 170 U. S. 343, are directly opposed to *Harding* v. *United States*, 1 Wall., Jr., 127, Fed. Cas. No. 15,301.

In practically all jurisdictions where the common law prevails it has been uniformly held that the accused cannot waive his immunity from second jeopardy of punishment for the greater felony by appeal from conviction of a lesser. The question has been raised in many States where the common law prevails, and, we believe, has always been answered in the negative, except in Ohio and South Carolina. *People* v. *Dowling*, 84 N. Y. 478; *Guenther* v. *People*, 24 N. Y. 100; *People* v. *Cignarale*, 110 N. Y. 23, 30; *Stuart* v. *Commonwealth*, 28 Gratt. 950; *State* v. *Martin*, 30 Wisconsin, 216; *State* v. *Hills*, 30 Wisconsin, 416; *State* v. *Belden*, 33 Wisconsin, 120; *Slaughter* v. *State*, 6 Humph. 410; *Brennan* v. *People*, 15 Illinois, 511; *Barnett* v. *People*, 54 Illinois, 325; *Sipple* v. *People*, 10 Bradwell, 144; *Morris* v. *State*, 8 S. & M. (Miss.) 762; *Johnson* v. *State*, 29 Arkansas, 31; *State* v. *Tweedy*, 11 Iowa, 350; *State* v. *Ross*, 29 Missouri, 32; *State* v. *Kattleman*, 35 Missouri, 105; *Johnson* v. *State*, 27 Florida, 245; *Golding* v. *State*, 31 Florida, 262; *Dennison* v. *State*, 31 La. Ann. 847; *State* v. *Murphy*, 13 Washington, 229; *Bell* v. *State*, 48 Alabama, 684; *Berry* v. *State*, 65 Alabama, 163; *Brown* v. *United States*, 52 S. W. Rep. 56; *Jones*

v. *State,* 13 Texas, 168; *State* v. *Stevens,* 29 Oregon, 85; *People* v. *Knapp,* 26 Michigan, 112, 113; *People* v. *Comstock,* 55 Michigan, 405, 407; *George* v. *State,* 59 Nebraska, 163; *State* v. *Kettle,* 2 Tyler (Vt.), 472.

In several States there are statutory provisions permitting the retrial for the greater offense, but no such statute exists in the Philippine Islands; see § 270, Kentucky Code of Practice; Rev. Stat. Indiana, § 141; § 274, Code of Kansas. On the strength of these statutes the courts of these States have held that where a new trial is granted the accused may be again tried for the greater offense of which he was acquitted on the first trial. *Commonwealth* v. *Arnold,* 83 Kentucky, 1; *Morris* v. *State,* 1 Black, 37; *Veatch* v. *State,* 60 Indiana, 291; *State* v. *McCord,* 8 Kansas, 232.

In California the court held that, on new trial, the accused cannot again be prosecuted for any crime of which he was acquitted on the first trial without violating the second jeopardy clause of the state constitution. *People* v. *Gilmore,* 4 California, 376; *People* v. *Gordon,* 99 California, 227; see also *Waller* v. *State,* 104 Georgia, 505. Against these cases are some in Ohio and South Carolina holding that the appeal amounts to a waiver.

These cases show that in Alabama, Arkansas, California, Florida, Illinois, Iowa, Louisiana, Michigan, Mississippi, Missouri, Nebraska, New York, Oregon, Tennessee, Texas, Vermont, Virginia, Washington and Wisconsin, and in the Indian Territory the rule is the accused cannot waive his immunity from second jeopardy, and on new trial he can only be prosecuted for the crime of which he stood convicted. In Kentucky, Indiana and Kansas there is a different rule based on statutory provisions, to the effect that "a new trial places the parties in the same position as if no trial had been had." The California courts, however, hold, on a similar statutory provision, that there can be no second prosecution for the offense of which the defendant was acquitted on first trial. In Georgia and Missouri the common-law rule has been changed by the constitution, and in Ohio

and South Carolina the courts have adopted a different doctrine from that prevailing at the common law. Thus, nineteen States and the Indian Territory have held that there can be no waiver. In Ohio and South Carolina the courts have set aside the common-law rule. In the five remaining States the statutory ·or constitutional provisions have expressly changed the rule where new trial is granted on defendant's motion.

The English courts have gone so far in support of the maxim that no man ought to be twice brought in danger of his life for one and the same crime that they have always refused a new trial in cases of felony where the indictment is valid. *Rex* v. *Mawbey,* 6 T. R. 619; ·*Regina* v. *Bertrand,* L. R. 1 P. C. 520. See *United ·States* v. *Gibert,* 2 Sumn. 19; *People* v. *Comstock,* 8 Wend. 549.

*The Solicitor General* for the United States:

The right of trial by jury is not involved in this case, *Dorr* v. *United States,* 195 U. S. 138, 148; nor the right of the Government in accordance with the Spanish procedure to appeal from a judgment of acquittal. That claim of the prosecuting authority in the Philippine Islands is adjudged to be a violation against the guarantee of second jeopardy. *Kepner* v. *United States,* 195 U. S. 100. The only issue here is a different and distinct aspect of the second jeopardy question. The sole question is whether the Supreme Court of the Philippines, by adjudging the defendants guilty of homicide upon the hearing of their appeal from the judgment of the court of first instance which found them guilty of assault only, placed them in jeopardy a second time for the crime of homicide, in violation of the second jeopardy provisions of the act of July 1, 1902, 32 Stat. 692.

· The right of appeal from courts of first instance to the Supreme Court or Audiencia was conferred by § 43, G. O. No. 58, December 18, 1899, 1 Laws Phil. Com., 1087, §§ 32, 42, 43, 50. The jurisdiction of courts of first instance to try offenses of the character involved here is conferred by the act of the Philip-

pine Commission of June 11, 1901, § 56, No. 136, 1 Laws Phil.
Com., 252. That act abolished, the existing Audiencia or Su-
preme Court, and substituted the present Supreme Court of the
Philippines, § 39, providing for appeals to that court from judg-
ments of courts of first instance, § 18. Under these provisions
of law and the decisions thereon the Supreme Court has juris-
diction on appeal in criminal cases identical with that of the
old Audiencia, and has authority to review the whole case, both
upon the facts and the law. *United States* v. *Atienza*, 1 Philip-
pine Rep. 736; *United States* v. *Abijan*, 1 Philippine Rep. 83.
These decisions are in harmony with those of this court to the
effect that in general an appeal removes a cause entirely, sub-
jecting the law and facts to a review and retrial. *United States*
v. *Goodwin*, 7 Cr. 108; *Dower* v. *Richards*, 151 U. S. 658.

An appeal in a criminal case is not a necessary element of
due process of law, but is merely a privilege accorded the ac-
cused by statute, and any one who avails of the privilege as-
sents thereby to the conditions attached to it. *McKane* v.
*Durston*, 153 U. S. 684; *Andrews* v. *Swartz*, 156 U. S. 272; *Kohl*
v. *Lehlback*, 160 U. S. 293; *Murphy* v. *Massachusetts*, 177 U. S.
155. The state authorities are in full accord. *Commonwealth*
v. *Arnold*, 83 Kentucky, 1; *Briggs* v. *Commonwealth*, 82 Vir-
ginia, 554; *State* v. *Hart*, 33 Kansas, 218, 222; *People* v. *Palmer*,
109 N. Y. 413.

As to the right to increase the punishment, under Spanish
procedure in the Philippines, as continued by us, if an accused
were convicted by the trial court, the Audiencia upon review
might raise or lower his punishment or acquit him altogether.
*United States* v. *Kepner*, 1 Philippine Rep. 397. If the defend-
ants felt aggrieved at the decision, and could produce new evi-
dence, a trial *de novo* before the court of first instance was open
to them under the law, § 42, G. O. 58. By taking their ap-
peal defendants assented to the conditions upon which it was
granted and thereby waived any right to plead the judgment
of the court of first instance as a bar to their conviction for a
higher offense by the Supreme Court upon appeal.

This Philippine proceeding is not a review on alleged errors of law alone, or an ordinary motion for a new trial, which in this country, if granted, would result in sending the case back to another jury for a new trial. This appeal of defendants is itself a new trial on their own motion, and is properly submitted as such to the appellate court.

When in any criminal case in which a single offense is charged a verdict of guilty is set aside or reversed and a new trial granted, the effect is to annul the judgment below as effectually as if there had been no trial. *United States* v. *Keen*, 26 Fed. Cas. 686; 4 Blackstone, 336, 337; *Lockwood* v. *Jones*, 7 Connecticut, 436; *Zaleski* v. *Clark*, 45 Connecticut, 397; *Rassmussen* v. *State*, 63 Wisconsin, 1; *Bailey* v. *State*, 29 Georgia, 579; *Regina* v. *Drury*, 3 Cox Crim. Cas. 544.

On the main question, whether the accused was twice in jeopardy, the state courts are not in harmony. But the sound view is, despite adverse authorities, that a new trial on defendant's motion wipes out the previous determination and leaves no former jeopardy against the constitutional inhibition. *United States* v. *Harding*, 26 Fed. Cas. 131; *United States* v. *Keen*, 26 Fed. Cas. 686; *People* v. *Palmer*, 109 N. Y. 413; *State* v. *Bradley*, 67 Vermont, 465; *State* v. *Behmer*, 20 Ohio St. 572; *Commonwealth* v. *Arnold*, 83 Kentucky, 1; *Bailey* v. *State*, 26 Georgia, 579; *Small* v. *State*, 63 Georgia, 386; *State* v. *Terreso*, 56 Kansas, 126; *Kansas* v. *McCord*, 8 Kansas, 232; *Veatch* v. *State*, 60 Indiana, 291; *Bohanan* v. *State*, 18 Nebraska, 57. The reasoning of the numerous cases which follow the contrary doctrine is not satisfactory. That there is no implied acquittal which is conclusive is the better rule, and so far as any rule at all has been laid down by Federal judges, they take this ground.

If constitutions mean what is claimed, statutes providing that a new trial annuls the previous judgment are invalid. But Mr. Justice Miller in *Kring* v. *Missouri*, 107 U. S. 221, held that a State could abolish by constitutional amendment or by legislation the rule of implied acquittal of a higher offense

upon conviction for a lower grade, and reopen the case upon a new trial to the entire original charge. The Philippine law is tantamount to such a statute in a State; and Justices Grier and McLean have said or implied, in *United States* v. *Harding* and *United States* v. *Keen, supra,* that the Federal Constitution does not throw the protection against second jeopardy around a criminal who seeks a new trial.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

The plaintiffs in error seek a reversal of the judgment in their case on the ground that the Supreme Court of the Philippine Islands had no power to reverse the judgment of the court of first instance, and then find them guilty of a higher crime than that of which they had been convicted in that court, and of which higher crime that court had acquitted them, and they contend that such conviction by the Supreme Court of the islands was a violation of the act of Congress, passed July 1, 1902, 32 Stat, 691, a portion of the fifth section of that act providing that "no person for the same offense shall be twice put in jeopardy of punishment."

This language is to be found in connection with other language in the same act, providing for the rights of a person accused of crime in the Philippine Islands. The whole language is substantially taken from the Bill of Rights set forth in the Amendments to the Constitution of the United States, omitting the provisions in regard to the right of trial by jury and the right of the people to bear arms, and containing the prohibition of the Thirteenth Amendment, and also prohibiting the passage of bills of attainder and *ex post facto* laws.

The important question to be determined is, whether this action of the Supreme Court of the Islands did violate the act of Congress, by placing the accused twice in jeopardy.

The meaning of the phrase, as used in the above-mentioned act of Congress, was before this court in *Kepner* v. *United*

*States*, decided in May, 1904, 195 U. S. 100, where will be found a very full discussion of the subject. The plaintiff in error in that case had been acquitted of the crime charged against him in the court of first instance, but the Government, not being satisfied with the decision, appealed to the Supreme Court, and that court reversed the judgment of acquittal and found Kepner guilty of the crime of which the court of first instance had acquitted him, and sentenced him to a term of imprisonment, and suspended him from any public office or public trust, and deprived him of the right of suffrage. This court, upon writ of error, held that, in reversing upon the appeal of the Government, the judgment of the court of first instance, and itself convicting the accused and pronouncing judgment against him, the Supreme Court of the Islands violated the provision in question, and its judgment was therefore reversed and the prisoner discharged. It was also held that the Government had no power to obtain a review of a judgment or decision of the trial court acquitting an accused party, and that the phrase in question was to be construed as the same phrase would be construed in the instrument from which it was originally taken, viz., the Constitution of the United States, and that the settled and well-known meaning of the language, as used in the Constitution, must also be taken when the same language is used in the act of Congress, and not as it might possibly be construed with reference to Spanish law or Spanish procedure.

The difference between that case and the one now before the court is obvious. Here the accused, while acquitted of the greater offense charged in the complaint, were convicted of a lesser offense included in the main charge. They appealed from the judgment of the court of first instance and the Government had no voice in the matter of the appeal, it simply followed them to the court to which they appealed. We regard that fact as material and controlling. The difference is vital between an attempt by the Government to review the verdict or decision of acquittal in the court of first instance and the action of the accused person in himself appealing from the

judgment and asking for its reversal, even though that judgment, while convicting him of the lower offense, acquits him of the higher one charged in the complaint.

We may regard the question as thus presented as the same as if it arose in one of the Federal courts in this country, where, upon an indictment for a greater offense, the jury had found the accused not guilty of that offense, but guilty of a lower one which was included in it, and upon an appeal from that judgment by the accused a new trial had been granted by the appellate court, and the question was whether, upon the new trial accorded, the accused could be again tried for the greater offense set forth in the indictment, or must the trial be confined to that offense of which the accused had previously been convicted, and which conviction had, upon his own motion, been set aside and reversed by the higher court.

This question has given rise to much diversity of opinion in the various state courts. Many of them have held that the new trial must be confined to the lesser offense of which the accused had been convicted on the first trial, while other courts have held precisely the contrary, and that upon a new trial the whole case was open as if there had been no former trial. Most, if not all, of these two classes of cases have been cited by the respective counsel in this case and will be found in their briefs herein. It would be unprofitable to cite and refer to each of them in detail here. They have been carefully examined.

Those cases which limit the new trial proceed upon the ground, as stated in *People* v. *Dowling*, 84 N. Y. 478, 483, by Folger, Chief Judge, as follows:

"The matter at the bottom is the constitutional provision that 'No person shall be subject to be twice put in jeopardy for the same offense' (Const. of N. Y. Art. 1, par. 6), and yet new trials are granted in criminal cases on the motion of the accused, and if he gets a new trial he is thus subject to be twice put in jeopardy. This is done on the ground, that by asking for a correction of errors made on the first trial, he does waive his constitutional protection, and does himself ask for a new

trial, though it brings him twice in jeopardy. But that waiver, unless it be expressly of the benefit of the verdict of acquittal, goes no further than the accused himself extends it. His application for a correction of the verdict is not to be taken as more extensive than his needs. He asks a correction of so much of the judgment as convicted him of guilt. He is not to be supposed to ask correction or reversal of so much of it as acquitted him of offense. He, therefore, waives his privilege as to one, and keeps it as to the other. It is upon this principle, that where, by a verdict of guilty on one count or for one offense, and an acquittal on or for another, there has been a partial conviction on an indictment, and on writ of error there has been a reversal of the conviction, the acquittal still stands good, and is, as to that count or offense, a bar. As to that, the plea of *autrefois acquit* can be upheld, though the plea of *autrefois convict* cannot be upheld as to the offense of which the verdict was guilty. The waiver is construed to extend only to the precise thing concerning which the relief is sought."

But in the subsequent case of *People* v. *Palmer,* 109 N. Y. 413, 419, the effect of the statute of New York, known as sections 464 and 544 of the Code of Criminal Procedure, was under consideration. Those sections enacted as follows:

"Sec. 464. The granting of a new trial places the parties in the same position as if no trial had been had. . . ."

"Sec. 544. When a new trial is ordered, it shall proceed in all respects as if no trial had been had."

The statute was held valid, and that it did not violate the constitutional provision against subjecting a person to be twice put in jeopardy for the same offense, as the jeopardy was incurred with the consent of and as a privilege granted to the defendant upon his application.

And generally, it may be said that the cases holding that a new trial is not limited in the manner spoken of proceed upon the ground that in appealing from the judgment the accused necessarily appeals from the whole thereof, as well that which acquits as that which condemns; that the judgment is one en-

tire thing, and that as he brings up the whole record for review
he thereby waives the benefit of the provision in question, for
the purpose of attempting to gain what he thinks is a greater
benefit, viz., a review and reversal by the higher court of the
judgment of conviction.    Although the accused was, as is said,
placed in jeopardy upon the first trial, in regard not only to the
offense of which he was accused, but also in regard to the lesser
grades of that offense, yet by his own act and consent, by ap-
pealing to the higher court to obtain a reversal of the judgment,
he has thereby procured it to be set aside, and when so set
aside and reversed the judgment is held as though it had never
been.    This was in substance decided in *United States* v. *Hard-
ing et al.*, tried in the United States Circuit Court in 1846, 26
Fed. Cas. 131, before Mr. Justice Grier, then a member of this
court, and this is the ground substantially upon which the de-
cisions of the other courts are placed.

In *Kring* v. *Missouri*, 107 U. S. 221, it was stated by Mr.
Justice Miller, who delivered the opinion of the court, that it
was admitted that by the law of Missouri, as it stood at the
time of the homicide, the prisoner having been convicted of
murder in the second degree upon an indictment charging him
with murder in the first degree, if that conviction was set aside
he could not again be tried for murder in the first degree.    That
law was in force at the date of the homicide for which Kring
was sentenced to death, but it was subsequently, and before
his retrial, changed so as to deprive him of the benefit to which
he would otherwise have been entitled, and this court held that
that change was, as to him, *ex post facto* and void.    It was also
said by the court that there was "no question of the right of
the State of Missouri, either by her fundamental law or by an
ordinary act of legislation, to abolish this rule, and that it is a
valid law as to all offenses committed after its enactment.    The
question here is, Does it deprive the defendant of any right of
defense which the law gave him when the act was committed
so that as to that offense it is *ex post facto?*"    This court an-
swered that question in the affirmative.

In our opinion the better doctrine is that which does not limit the court or jury, upon a new trial, to a consideration of the question of guilt of the lower offense of which the accused was convicted on the first trial, but that the reversal of the judgment of conviction opens up the whole controversy and acts upon the original judgment as if it had never been. The accused by his own action has obtained a reversal of the whole judgment, and we see no reason why he should not, upon a new trial, be proceeded against as if no trial had previously taken place. We do not agree to the view that the accused has the right to limit his waiver as to jeopardy, when he appeals from a judgment against him. As the judgment stands before he appeals, it is a complete bar to any further prosecution for the offense set forth in the indictment, or of any lesser degree thereof. No power can wrest from him the right to so use that judgment, but if he chooses to appeal from it and to ask for its reversal he thereby waives, if successful, his right to avail himself of the former acquittal of the greater offense, contained in the judgment which he has himself procured to be reversed.

It is urged, however, that he has no power to waive such a right, and the case of *Hopt* v. *Utah,* 110 U. S. 574, is cited as authority for that view. We do not so regard it. This court held in that case that in the Territory of Utah the accused was bound, by provisions of the Utah statute, to be present at all times during the trial, and that it was not within the power of the accused or his counsel to dispense with such statutory requirement. But on an appeal from a judgment of this nature there must be a waiver to some extent on the part of the accused when he appeals from such judgment. When the first trial is entered upon he is then put in jeopardy within the meaning of the phrase, and yet it has been held, as late as *United States* v. *Ball,* 163 U. S. 662, 671 (and nobody now doubts it), that if the judgment of conviction be reversed on his own appeal, he cannot avail himself of the once-in-jeopardy provision as a bar to a new trial of the offense of which he was

convicted. And this is generally put upon the ground that by appeal he waives his right to the plea, and asks the court to award him a new trial, although its effect will be, if granted, that he will be again tried for the offense of which he has been once convicted. This holding shows that there can be a waiver of the defense by reason of the action of the accused. As there is, therefore, a waiver in any event, and the question is as to its extent (that is, how far the accused by his own action may be deemed to have waived his right), it seems much more rational and in better accord with the proper administration of the criminal law to hold that, by appealing, the accused waives the right to thereafter plead once in jeopardy, when he has obtained a reversal of the judgment, even as to that part of it which acquitted him of the higher while convicting him of the lower offense. When at his own request he has obtained a new trial he must take the burden with the benefit, and go back for a new trial of the whole case. It does not appear to us to be a practice founded on solid reason to permit such a limited waiver by an accused party, while himself asking for a reversal of the judgment.

There is also the view to be taken that the constitutional provision was really never intended to, and, properly construed, does not cover, the case of a judgment under these circumstances, which has been annulled by the court at the request of the accused, and there is, therefore, no necessity of relying upon a waiver, because the correct construction of the provision does not make it applicable.

A further question is made as to the power of the Supreme Court of the Islands to reverse the judgment appealed from and itself convict the accused on appeal. The Supreme Court, in so doing, acted within its power and jurisdiction. It is a result of the ordinary procedure in the courts of that country, proceeding under the act of Congress already referred to. See statement of the procedure in the case heretofore cited, *Kepner* v. *United States*, 195 U. S. 100.

The judgment of the Supreme Court of the Philippine Islands is right, and it is

*Affirmed.*

MR. JUSTICE HOLMES concurs in the result.

MR. JUSTICE HARLAN, dissenting.

The plaintiffs in error were tried by one of the courts of first instance in the Philippine Islands for the crime of murder. The trial was before a single judge, without a jury, and simply upon a written complaint filed by an individual with a justice of the peace. The judge who tried the accused found them not guilty of murder, and guilty only of assault. For the latter offense they were each sentenced to six months' imprisonment. Upon appeal by the accused to the Supreme Court of the Islands, the judgment of the trial court was reversed, and two of the accused were condemned to the penalty, each one, of fourteen years, eight months and one day of *reclusión temporal,* the other one to the penalty of eight years and one day of *prisión mayor,* and all three to the indemnification of five hundred Philippine *pesos* to the heirs of the deceased.

I did not so state in a separate opinion in *Kepner* v. *United States,* 195 U. S. 100, but my concurrence in the judgment in that case was upon the ground that from the moment of the complete acquisition of the Philippine Islands by the United States, and without any act of Congress, or a proclamation of the President upon the subject, the people of those Islands became entitled, of right, to the benefit of all the fundamental guarantees of life, liberty and property to be found in that instrument. Hence, my approval of the view, announced in *Kepner's case,* that the accused was entitled to the benefit of the jeopardy clause of the Constitution.

Assuming that it was competent for the court of first instance to proceed without a jury against the accused upon a mere complaint by an individual, I desire to express my concurrence in the dissenting opinion of Mr. Justice McKenna, so far as it

holds that the accused in the present case were entitled to the benefit of the jeopardy clause of the Constitution, and that after their acquittal in the tribunal assuming jurisdiction to try them for the crime of murder they could not thereafter, in any appellate tribunal, deriving its authority from the United States, be again tried for that crime or for any crime more serious than the one of which they were convicted in the court of first instance.

But I dissent from the opinion and judgment of the court in the present case upon the broader ground that, as the Constitution of the United States is the supreme law of the land; as that instrument declares that except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger, "*no person* shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury," and that "the trial of *all* crimes, except in cases of impeachment, *shall* be by jury;" and as the people of the Philippine Islands are as much under the authority and jurisdiction of the United States as are the people within the limits of the several States and of the organized Territories of the United States, the prosecution of the accused, based only upon the written complaint of an individual, filed with a justice of the peace, and their trial by a single judge, was without authority of law, and a nullity from beginning to end. I repeat substantially what has been said by me in former cases, that no person, within the territory and subject to the sovereign jurisdiction of the United States, can be legally deprived of his life or liberty for crime committed by him against the United States, except in the mode prescribed by the Constitution of the United States. I am unable to perceive how a principle declared by the supreme law of the land to be essential in all prosecutions for crime against the United States can be recognized as applicable to a part of the people subject to the sovereign jurisdiction of the United States, and yet be denied to another part of the people equally subject to the national authority. No tribunal or officer deriving its au-

thority from the United States can disregard the mandatory injunctions of the Constitution by which the Government of the United States is created, and under the sanction of which alone that Government exists and performs its functions. It may be that the application of these principles to the Philippine Islands and to the people who inhabit them may, particularly in criminal prosecutions, prove sometimes to be inconvenient. But no authority exists anywhere to set aside plain provisions of the supreme law of the land, and substitute the law of convenience for the written fundamental law.

Mr. Justice McKenna, with whom concurs Mr. Justice White, dissenting.

I am unable to concur in the judgment of the court.

When the United States acquired the Philippine Islands the system of jurisprudence which prevailed there was different from our Anglo-Saxon jurisprudence. Trial by jury was unknown. The trial court, called the court of first instance, had full authority to find the facts and adjudge the law, subject, however, to a review by a higher court of both the facts and law.

This system was continued substantially by the orders of the President and the act of July 1, 1902, providing for the government of the Islands.

Therefore when *Kepner* v. *United States,* 195 U. S. 100, was decided I was of opinion that under such a system there could be no justifiable foundation for the plea of *autrefois acquit,* resulting from a judgment of acquittal by the lower court, when such judgment had been reversed by the higher court; in other words, that there could be no foundation for the plea of *autrefois acquit* arising from an acquittal in a case where the acquittal was subsequently reversed as a result of a right to review, not only the law but the facts, given by the very statutes which provided for the trial. The court, however, decided otherwise, and I joined in a dissent to the opinion. The *Kepner case* is not overruled. It is said to be so clearly distinguishable as

not to call for much attention. I think otherwise. What was the *Kepner case,* and what is this?

Kepner was charged with the crime of embezzlement. He was tried in the court of first instance, without a jury, and acquitted. Upon the appeal of the United States to the Supreme Court of the Philippine Islands the judgment of the court of first instance was reversed, and he was found guilty and sentenced to a term of imprisonment. This court reversed the judgment and discharged Kepner on the ground that by his trial in the court of first instance he had been in jeopardy, and to try him again upon the merits, even in an appellate court, was to put him a second time in jeopardy for the same offense. In the case at bar the plaintiffs in error were charged with murder. They were tried in the court of first instance without a jury. They were convicted of simple assault. They appealed to the Supreme Court, and that court reversed the judgment of the court of first instance and convicted them of murder in the second degree. I will not stop to demonstrate that the conviction of the lesser crime of assault was an acquittal of the greater charge of murder. It has been made unnecessary by clear concession in the opinion that plaintiffs in error were acquitted of murder. Indeed (though it probably makes no difference in principle) it was explicitly so found and pronounced in the judgment of the court of first instance. There is an exact parallel, therefore, between this case and the *Kepner case* in all particulars but one. In the *Kepner case* the appeal was by the United States; in the case at bar it was by the accused, and this difference is especially made the ground of decision. It is, in effect, held that because the defendants (plaintiffs in error) appealed and sought a review, as authorized by the statute, of the minor offense for which they were convicted, the United States was given the right to try them for the greater offense for which they were acquitted. In some of the cases quoted in the opinion such a result is said to arise from the consent of the accused, deemed to be given by taking an appeal. An accused would not purposely and consciously

appeal from an acquittal of a grave crime and cast from himself the immunity that such an acquittal gives him. Should such consent be imputed? Let it be remembered that we are dealing with a great right, I may even say a constitutional right, for the opinion of the court discusses the case as though it were from a Circuit Court of the United States. Should such a right be narrowly or grudgingly considered? Should it be put in balance with other rights and lost by their exercise? I think that the guarantees of constitutions and laws should not be so construed. The life and liberty of the citizen are precious things—precious to the State as to the citizen, and concern for them is entirely consistent with a firm administration of criminal justice. I submit that the State seeks no convictions except in legal ways, and because it does not it affords means of review of erroneous rulings and judgments, and freely affords such means. It does not clog them with conditions or forfeit by their exercise great and constitutional rights. Yet in my judgment such is the effect of the decision just rendered.

The opinion says that as the accused takes up the whole record for review, "he thereby waives the benefit of the provisions in question (once in jeopardy) for the purpose of attempting to gain what he thinks is a greater benefit, viz., a review and reversal by the higher courts of the judgment of conviction." I repeat again, that constitutional guarantees and statutory remedies should not be put in such barter; that a defendant should not be required to give up the protection of a just (it must be so regarded for the sake of the argument) acquittal of one crime as the price of obtaining a review of an unjust conviction of another crime.

In the opinion in the *Kepner* case it was said: "It is not necessary to determine in this case whether the jeopardy provision in the Bill of Rights would have become a part of the law of the Islands without Congressional legislation." Resting the decision on that legislation, the court further observed: "How can it be successfully maintained that this expression of fundamental rights, which have been the subject of frequent

adjudication in the courts of this country, and the maintenance of which has been ever deemed essential to our Government, could be used by Congress in any other sense than that which has been placed upon them in construing the instrument from which they were taken?

"It is a well-settled rule of construction that language used in a statute which has a settled and well-known meaning, sanctioned by judicial decision, is presumed to be used in that sense by the legislative body. *The Abbottsford*, 98 U. S. 440."

If this language expresses a proper and determining test of once in jeopardy against the appeal of the United States, it must also be the test of once in jeopardy against the appeal of the accused in the case at bar. By that test the judgment should be reversed. Here and there may be found a decision which supports the exposition of once in jeopardy expressed in the opinion. Opposed to it is the general consensus of opinion of American text books on criminal law and the overwhelming weight of American decided cases. Which may we suppose Congress adopted in its legislation, the interpretation of a few cases (able, it may be, and highly sanctioned by the reputation of the courts that delivered them), or the interpretation of the courts of a large number of the States of the Union? See cases in the margin.[1]

THE CHIEF JUSTICE also dissented.

---

[1] Alabama—*Bell* v. *State*, 48 Alabama, 684; *Berry* v. *State*, 65 Alabama, 117; *Sylvester* v. *State*, 72 Alabama, 201.

California—*People* v. *Gilmore*, 4 California, 376; *People* v. *Apgar*, 35 California, 389; *People* v. *Gordon*, 99 California, 227.

Florida—*Johnson* v. *State*, 27 Florida, 245; *Golding* v. *State*, 31 Florida, 262.

Illinois—*Brennan* v. *People*, 15 Illinois, 511; *Barnett* v. *People*, 54 Illinois, 325.

Iowa—*State* v. *Tweedy*, 11 Iowa, 350; *State* v. *Helm*, 92 Iowa, 540.

Louisiana—*State* v. *Dennison*, 31 La. Ann. 847; *State* v. *Victor*, 36 La. Ann. 978.

Michigan—*People* v. *Knapp*, 26 Michigan, 112, 114; *People* v. *Comstock*, 55 Michigan, 405, 407.

Minnesota—*State* v. *Lessing*, 16 Minnesota, 75.

---

Mississippi—*Morris* v. *State,* 8 S. & M. 762; *Hurt* v. *State,* 25 Mississippi, 378.

Missouri—Prior to alteration effected by constitutional amendment of 1875
(as to which see *State* v. *Simms,* 71 Missouri, 538), in *State* v. *Ross,*
29 Missouri, 32; *State* v. *Kattlemann,* 35 Missouri, 105; *State* v. *Brannon,*
55 Missouri, 63.

New York—Prior to alteration effected by the Code of Procedure (as to
which see *People* v. *Palmer,* 109 N. Y. 413), in *Guenther* v. *People,* 24
N. Y. 100; *People* v. *Dowling,* 84 N. Y. 478; and see *People* v. *Cignarale,*
110 N. Y. 23, 30.

Oregon—*State* v. *Steeves,* 29 Oregon, 85.

Tennessee—*Campbell* v. *State,* 9 Yerg. 333; *Slaughter* v. *State,* 6 Humph.
410, 415.

Texas—*Jones* v. *State,* 13 Texas, 168.

Virginia—Before alteration by statute (as to which see *Briggs* v. *Common-
wealth,* 82 Virginia, 554), doctrine enforced in *Stuart* v. *Commonwealth,*
28 Gratt. 950. Reinstated by later statute, as to which see *Forbes*
v. *Commonwealth,* 90 Virginia, 550, and *Benton* v. *Commonwealth,* 91
Virginia, 782.

Washington—*State* v. *Murphy,* 13 Washington, 229.

Wisconsin—*State* v. *Martin,* 30 Wisconsin, 216; *State* v. *Hill,* 30 Wisconsin,
416; *State* v. *Belden,* 33 Wisconsin, 120. (But not in cases of misde-
meanors—*Rasmussen* v. *State,* 63 Wisconsin, 1.)

Georgia, owing to constitutional provisions, and by statute in the States
of Indiana, Kansas and Kentucky, when a new trial is granted on motion
of an accused he may be tried again for the greater offense of which he was
acquitted on the first trial (*Morris* v. *State,* 1 Blackf. 37; *Veatch* v. *State,*
60 Indiana, 291; *State* v. *McCord,* 8 Kansas, 232; *Commonwealth* v. *Arnold,*
83 Kentucky, 1).