301 So.2d 587 (1974)
STATE of Louisiana
v.
Leon WILLIAMS.
No. 54767.
Supreme Court of Louisiana.
October 11, 1974.
*588 Crawford A. Rose, Jr., Rayville, for defendant-appellant.
William T. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Thompson L. Clarke, Dist. Atty., John T. Seale, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Defendant appeals his conviction and sentence for armed robbery, reserving five bills of exceptions.
The first bill was taken to the overruling of a plea of double jeopardy. The offense for which defendant was tried occurred August 5, 1972. He was convicted in December of 1972, but the conviction was reversed on appeal. State v. Williams, 275 So.2d 738 (La.1973). The reversal was based on the invalidity of the bill of information. Defendant's argument is that Article 595 of the Code of Criminal Procedure does not include a reference to a bill of information, and therefore is not applicable to this case. The argument is without merit.
Article 595 of the Code of Criminal Procedure provides:
"A person shall not be considered as having been in jeopardy in a trial in which:
"(1) The court was illegally constituted or lacked jurisdiction;
"(2) The prosecution was dismissed because it was instituted in an improper venue; or
"(3) The indictment was invalid."
Article 461 of the Code of Criminal Procedure defines the word "indictment" to include affidavit and bill of information, "unless it is the clear intent to restrict that word to the finding of a grand jury." There is no such intent in C.Cr.P. 595.
The basis for the requirement that, in order to support a plea of former jeopardy, the previous proceeding must be based on a valid and sufficient indictment or information is that the previous conviction might be upset at any time.
The historic exception to the double jeopardy rule in the United States is that a defendant is not protected against a second trial when the verdict of the first trial was invalidated for error in the proceedings on the motion of the defendant himself.
Prior to the American Revolution, the trial court in England was the first and final court. There was no right of appeal from either a conviction or an acquittal. Slovenko, The Law of Double Jeopardy, 30 Tul.L.Rev., 409, 425 (1955-1956). If the defendant obtains a reversal of his original conviction, he may be tried again without violating the prohibition against double jeopardy. One theory is that he is considered as having waived the immunity against a second trial by seeking to upset the first. Trono v. United States, 199 U.S. 521, 26 S.Ct. 121, 50 L.Ed. 292 (1905); United States v. Ball, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896).
From some of the earliest Louisiana cases, it has been clear that a defendant will not be protected by the prohibition against double jeopardy when he obtains a reversal of a conviction based on an invalid indictment or information. State v. Owens, 28 La.Ann. 5 (1876); State v. McGarrity, 140 La. 436, 73 So. 259 (1916); State v. Gros, 204 La. 705, 16 So.2d 238 (1943). A reversal of a conviction on appeal for prosecutorial error (such as the improper selection of the grand jury) does not preclude a subsequent trial when the case is reversed on appeal. Eubanks v. *589 State of Louisiana, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958).
Bill of Exceptions No. 2 deals with the exclusion of the women from the jury. As defendant admits, this court has repeatedly upheld the jury selection system used in Louisiana under the authority of Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961). See cases collected in State v. Daniel, La., 297 So.2d 417 (1974).
The third bill of exceptions was reserved when the trial court permitted a witness called by the defendant to take advantage of the Fifth Amendment of the United States Constitution. The defendant complains that, since the witness was only required to state his name, there is nothing to show that anything he might have said would have been incriminating.
The witness, Major Lee Fortenberry, Jr., was asked by defense counsel, "I draw your attention to the 4th day of August, 1972. Were you with Leon Williams anytime during that day?"
August 4, 1972 was the date of the robbery for which Williams was being tried. Fortenberry had been previously convicted of the same offense. He had not appealed his conviction, but had been returned on a writ of habeas corpus following the ruling of this court in State v. Leon Williams, supra. But a new bill of information had been filed against Fortenberry and he was at the time of Williams' trial awaiting his trial for the same offense.
The contention of the defendant is without merit. Article 1, § 11 of the Louisiana Constitution of 1921 provides that "[n]o person shall be compelled to give evidence against himself in a criminal case or in any proceeding that may subject him to criminal prosecution, except as otherwise provided in this Constitution." The ruling of the trial judge was correct.
Bills of Exceptions Nos. 4 and 5 objected to a ruling of the court which adjourned to the sickroom of a witness in her home which, the defendant contends, denied him the right of cross-examination.
The State desired to call as a witness the aunt of the accused, in rebuttal to a contention that the defendant was not in the company of other persons accused of the robbery on the day of the robbery.
There was no error in the court's ruling to adjourn to the witness' home. There was no abuse of discretion in the determination that the inquiry was relevant, and that the witness was incapacitated. The record shows that the witness, Annie Mae Henderson, was the mother of Joseph Robinson. She testified that Joseph Robinson was her son, and that he was in Angola, having been sentenced for the robbery at Goodrum's Grocery, and that she was Leon Williams' aunt. She testified that she saw Leon Williams and Joseph Robinson together on August 4, 1972 after 3:00 o'clock in the afternoon in an automobile. The direct examination covers two and one-half pages of the transcript. About one of those pages is an attempt by the prosecutor to clarify an answer. In cross-examination, the defense lawyer asked two questions. He received an answer to the first, but none to the second. The trial judge suggested that if the witness would simply answer the last question, "We'll try to get the lawyer to make it short." The transcript merely reflects that at that point the defense counsel stated: "I have no further questions."
The judge's per curiam confirms the argument of defense counsel that the witness "was strong enough to answer questions on direct examination but was not strong enough to answer questions on cross examination."
Nevertheless, the only relief sought by defense counsel was that the trial judge instruct the jury to disregard the testimony of the sick witness for the reason that he was unable "to properly cross examine her."
The trial judge was not incorrect in his ruling. The record does not reflect that *590 there was a request for a mistrial, continuance, or even a momentary delay. The record does not indicate that the witness could not have regained her strength sufficiently to submit to questioning by defense counsel. Although the subject matter of the examination would have been painful to a healthy mother whose son was in prison, the question asked her was not complicated. It was whether, on the day of the robbery, she had seen her son in the company of her nephew. The very nature of the inquiry, under the circumstances, assured the reliability of the testimony sought. The State did not deny the defendant the right to continue the examination; rather, counsel abandoned the effort, apparently because of the weakness of the witness. Under the circumstances, we cannot say that there was a substantial violation of the constitutional right of cross-examination.
The conviction and sentence are affirmed.
BARHAM, J., concurs.