### JACOB JOHNSON *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Instructions.*

It is wise to use the words, "and not in necessary self-defense," in instructions for the state in murder cases; but the omission of such words, if the instruction be otherwise correct, will not constitute reversible error.

2. SAME. *Manslaughter.*

It is not error to refuse an instruction in a murder case informing the jury that they may find the accused guilty of manslaughter if, under the evidence, the jury could not rightfully so find.

3. SAME. *Penalty.*

It is allowable alone in capital cases to instruct the jury touching the quantum of punishment, and then only to inform them, where the statute so provides, that, if they agree on so doing, they may, on conviction fix the penalty at imprisonment for life.

4. INSTRUCTIONS.   *Modifications.*   *Code* 1892, § 732.

> A court under the statute (code 1892, § 732) may not give instructions
> not asked in writing.   It is authorized, but not under obligation,
> to modify a requested instruction.

FROM the circuit court of Adams county.

HON. JEFFERSON TRULY, Judge.

Johnson, appellant, having been indicted and convicted of
murder, appealed to the supreme court.   The opinion states
the case.

*A. H. Geisenberger*, for appellant.

In the case of *Walton* v. *State*, 57 Miss., 533, the court
say, on page 534, that they think the lower court erred in re-
fusing the instruction to the jury informing them that in case
they failed to affix to the crime the punishment for life in the
penitentiary, that it was the duty of the court to impose on the
accused the penalty of death.   And in an elaborate and well
considered opinion the court gives in detail the reasons for the
opinion that the error was made by the trial court, and all the
reasons alleged in that case will apply with strong force to the
case at bar.

The peremptory nature of the charge given the jury for the
state directed them to find the verdict " guilty as charged," if
they believed the defendant guilty, without giving them any
instructions or guidance as to the right to fix the penalty at less
than death.   Of course, if no instruction on the subject had
been asked of the court, as has been held in the case of *Penn*
v. *State*, 62 Miss., 450, a conviction will not be reversed be-
cause such an instruction had not been given.   But here the
instruction was asked by defendant and refused by the court
for no reason that the appellant can see, and no instruction
given in lieu thereof informing the jury of their right and the
law of the case.

*Monroe McClurg*, attorney-general, for appellee.

Appellant is before this court without a single meritorious

controversy.  *Omnia praesumuntur rite esse acta.*  *Phillips'*
*case*, 57 Miss., 357; *Spivey's case*, 58 Miss., 743; *Hunt's case*,
61 Miss., 577; *Lea's case*, 64 Miss., 201; Code 1892, §§ 732,
4370; *Watkins' case*, 60 Miss., 323; *Bang's case*, 61 Miss., 363.
After appellant's instruction as to the form of the verdict had
been refused, evidently because it did not announce the law, it
was his right to inquire of the court what the objection was,
and to present another properly stating the law.    There is no
merit in his contention that because he requested an erroneous
instruction that the court without further request should have
·nstructed the jury as to the form of the verdict.    Penn's case
62 Miss., 450, is conclusive of this proposition.    Evidently the
instruction requested and refused in Walton's case, 57 Miss.,
533, was properly drawn.

CALHOON, J., delivered the opinion of the court.

Jacob Johnson was convicted of the murder of Ella Johnson,
and sentenced to death.    It was a murder without any pretense
of justification, excuse or alleviation.    The man and the woman
had lived for a number of years in adulterous cohabitation,
with occasional separations.    On the last breach the woman
had left him.    He persistently hunted her up.    In his diabol-
ical and revengeful pursuit, he saw one Robert Kaiser, inquired
of him whether the perpetrator of a recent murder had been
arrested, and said he was going to kill somebody, and not a
man, but a woman.    An hour or so before he did the killing
he informed one Sam Martin that he was going to kill some
one.    About half after five o'clock in the afternoon, after
hunting for her all day, he found her, seized her by the left
arm and shot her twice with a pistol, killing her almost in-
stantly, and then left, and was arrested some ten days after-
wards in Louisiana, to which state he had fled.    All this is un-
disputed.

The district attorney wisely asked but one instruction, and
it was wholly unobjectionable on the facts, though we think it

wiser always to add the words, "and not in necessary self-defense." In this case there is no evidence squinting in the remotest degree at any act of the woman to warrant any imaginative fancy of self-defense.

Defendant's counsel, in his argument, bases his hope of reversal solely on the refusal of an instruction asked by him, as follows: "The court instructs the jury that they may find one of the following verdicts, to wit: (1) Guilty as charged, upon which the defendant will be sentenced to death; (2) guilty as charged, and fix his sentence at imprisonment for life, which will commit him to imprisonment for the balance of his life; (3) guilty of manslaughter, upon which the court will impose such term of imprisonment as he may deem proper; (4) not guilty."

This instruction was properly refused. To say to the jury, you "may find" a verdict of guilty of manslaughter, would mean that they might properly so find, whereas there is absolutely nothing in the evidence to warrant such a finding. The fact that the jury might, by mere brute power, have so found, is no reason the court should tell them so. Besides, the instruction does not define manslaughter, and it is faulty in stating that the court had control of the punishment of that crime. The only instance in which it is allowable to say anything to the jury about the quantum of punishment is, in capital cases, to inform them, where the statute so authorizes, that they may, if they agree on it, fix the sentence at imprisonment in the penitentiary for life, if they convict.

It follows that the instruction as a whole could not properly have been given. It is true the court might have modified it by erasing the manslaughter clause, but it was under no legal obligation to do this, and it was quite improbable that astute counsel wanted it done. If he had, he would, no doubt, have asked another free from the objection. He no doubt foresaw the same result in either case, and preferred the chance of error in the refusal.

A court may not, under our statute, give instructions not asked in writing, and need not modify those so asked unless it sees fit to do so.    Lawyers, as a rule, prefer that the instructions they ask be given as asked, without modification, or refused, but, even then, the court may modify if it chooses. *Walton* v. *State*, 57 Miss., 533, has no pertinency.    There the refused instruction was sound, and the error in refusing was not cured by the state's instruction.

*Affirmed, and the day of execution fixed for Wednesday, April 24, 1901.*