## OLLIE PARKER *v.* STATE.

### [58 South. 978.]

HOMICIDE. *Instructions. Evidence.*

On a trial of a defendant for murder it is reversible error for the court to instruct the jury for the state, that they were authorized to find the defendant guilty of manslaughter, where under the evidence the defendant was either guilty of murder or innocent.

APPEAL from the circuit court of Hinds county.

HON. W. A. HENRY, Judge.

Ollie Parker was convicted of manslaughter and appeals.

The facts are fully stated in the opinion of the court.

*W. J. Croom* and *Victor Montgomery,* for appellant.

*Frank Johnston,* assistant attorney-general, for state.

No brief of counsel for either side found in the record.

COOK, J., delivered the opinion of the court.

Appellant was indicted for murder, and convicted of manslaughter. The controversy between appellant and the deceased arose over a contest as to who had the right to control a certain horse. It appears from the record that the animal formerly belonged to a brother of the deceased, and that deceased's mother was also the mother of the former owner of the horse, and she had taken possession of the horse after the death of the intestate owner, and was assuming exclusive authority to control and direct the use of the animal. Of course, she did not have the legal right to do this, and it seems that deceased, realizing her lack of authority, proceeded to assert his joint ownership at the point of a shotgun.

This was somewhat irregular, and scarcely justified by the exigencies of the occasion. Nevertheless the deceased did thus assume to exercise his right of possession, and it was then the trouble started.

While it may be conceded that deceased had an equal interest in the horse with the other claimant, yet it does not follow that he had a right to arm himself with a shotgun, and while so armed threaten to kill any one who interfered with his purpose to take forcible possession of the horse, over the protest of his mother, who had rightful possession of the animal. The mother protested, and directed appellant, who was her son-in-law, to go forth and prevent deceased from taking the horse. Appellant first tried to dissuade deceased from executing his design by the use of soft words, but deceased would not be persuaded. Appellant thereupon got his gun and commanded deceased to leave the horse in the stable. Thus far the facts are clear, but from this time on the tragedy there is great confusion, uncertainty, and doubt. It is impossible to harmonize the various conflicting statements made by the only state witness. While in the hands of the district attorney he seems to make out a case of murder, if anything; but when he is under cross-examination he establishes a case of self-defense. After the lawyers representing the state and the defendant had examined, cross-examined, re-examined, and re-cross-examined the witness, the court, recognizing the irreconcilable conflict in the several versions which the witness had given of the tragedy, took the witness in hand and succeeded in drawing from him a final statement of the facts, as he then recalled them, which statement was in direct conflict with several other statements given by this witness, both to the district attorney and the counsel for the defendant; and so it was, for the first and last time, the state had thus established and firmly fixed the crime of murder upon the appellant.

Appellant and his wife testified in his behalf, and in such manner as to warrant the jury in reaching the con-

clusion that appellant was not guilty of murder, or any other crime. There is no evidence in the record which could possibly justify the belief that appellant was guilty of manslaughter. Viewing the testimony of the only state's witness most favorably for the state, and exercising much charity for the witness, the jury could have rejected what he said in favor of the theory of self-defense, and could have accepted what he said in support of the charge of murder; but they could not have struck a balance by crediting the defendant with self-defense, and then debiting him with murder, and by this process find that he was guilty of manslaughter. This is what the verdict means. It may be argued that the defendant could not complain, because he could have been convicted of a higher crime. This was the very matter in issue.

In this state of the record the court gave an instruction to the jury, at the request of the state, defining the crime of manslaughter, and also instructed the jury that, among other verdicts, the jury could find the defendant guilty of manslaughter. The court could just as well instruct the jury that they are authorized to find a verdict for the plaintiff for one-half of the amount of his claim, in a case wherein the only question involved is whether the defendant owed the entire amount claimed or owed nothing at all. The instruction authorizing the jury to convict the defendant of manslaughter was vicious in the extreme, when applied to a case like the one under review. There is no halfway ground here; no debatable question, except the defendant's guilt or innocence of the crime of murder. To advise the jury that they could compose their differences and doubts, if any they had, by finding the defendant guilty of a lesser crime, without evidence to support the verdict, is unfair to defendant and manifest error.

As before said, the only State's witness made many different and conflicting statements about the facts that

it is only with the greatest charity the jury could credit the witness with trying to tell the truth; and in this state of the case it seems clear to us that the jury could not have been warranted in compromising the case by finding the defendant guilty of a crime no element of which can be found in the testimony, and the court erred in so instructing. This state seems to have adopted the rule that a conviction for the lesser crime involved in the charge preferred in the indictment works an acquittal of the defendant for the greater crime. The soundness of this rule may be seriously questioned, and in many jurisdictions the rule of acquittal by implication has been abandoned.

*Reversed and remanded.*