CALICOAT *v.* STATE.

STRICKLAND *v.* SAME.

[95 South. 318. In Banc. No. 22290; No. 22824.]

1. CRIMINAL LAW. *To reverse, an error must have been committed in the trial favorable to appellee and prejudicial to appellant.*

   Before this court will reverse a cause it must be satisfied of two facts, namely, that an error in favor of the appellee was committed in the trial of the cause, and, second, that this error was prejudicial to the rights of the appellant.

.2 HOMICIDE. *Unwarranted conviction of manslaughter held harmless error under indictment for murder supported by evidence.*

   Where a person is slain by the defendant, and the slaying is admitted, but the defense is self-defense, then, on an indictment for murder, and a conviction of manslaughter, where the testimony would sustain a verdict of guilty of murder, and where there are no elements of manslaughter involved, it is harmless error, of which the defendant cannot complain, that a jury convicted him of manslaughter.

COOK, J., dissenting in *Calicoat case.* ETHRIDGE, J., concurring in result in *Calicoat case,* but dissenting as to *Strickland case.* ANDERSON, J., joining in dissent as to *Strickland case.*

APPEAL from circuit court of Lafayette county.

HON. W. A. ROANE, Judge.

APPEAL from circuit court of Pearl River county.

HON. G. WOOD MAGEE, Special Judge.

Callaway Calicoat and Loucinda Strickland were separately indicted for murder and convicted of manslaughter, and each appeals. Affirmed.

The following is an abstract of the brief referred to in the dissenting opinion of ETHRIDGE, J.

## II.

In the event that the court below erred in charging the jury on the law of manslaughter, was the error in granting the instruction favorable or prejudicial to the defendant? In other words, was it harmless?

On the foregoing proposition there are, in Mississippi, two distinct lines of authorities announcing opposite doctrines. The cases holding the granting of a manslaughter instruction in a case where the facts warranted a conviction of murder, and no element of manslaughter is shown by the evidence, to be prejudicial error are: *Virgil* v. *State,* 63 Miss. 317; *Parker* v. *State,* 102 Miss. 113, 58 So. 978; *Rester* v. *State,* 110 Miss. 689, 70 So. 881. The cases holding the contrary rule that such an instruction is harmless error because favorable to the accused are: *Rolls* v. *State,* 52 Miss. 391; *Lanier* v. *State,* 57 Miss. 102; *Powers* v. *State,* 83 Miss. 691, 36 So. 6; *Moore* v. *State,* 86 Miss. 160, 38 So. 504; *Huston* v. *State,* 105 Miss. 413, 62 So. 421.

The first expression of our court on the subject was in the *Rolls case, supra,* 52 Miss. 391, where it was contended that a conviction of manslaughter should be reversed because appellant was guilty of murder or nothing. The court's response to this contention was: "But, if really guilty of murder, it is not quite clear that the plaintiff in error has been prejudiced by the failure of the jury to find him guilty of that crime." In the case of *Lanier* v. *State* the court said that, while the jury would have been war-

ranted in finding the accused guilty of the crime charged,
that they failed to convict him of the higher offense was no
reason why the court should discharge him of the lesser
offense of which he had been convicted.   The next case
where the question arose was that of *Virgil* v. *State,* which
held that it was reversible error for the court to grant an
instruction in that case, but that such an instruction is or-
dinarily free from objection in trials of murder, because
it is favorable to defendant, who may not complain if a
more favorable view is taken of his case than the acts jus-
tify.   The court in this case cited no authorities in support
of its holding, and did not attempt to overrule the doctrine
previously announced in the *Rolls case* or in the *Lanier
case.*   Then followed the cases of *Powers* v. *State* and *Moore*
v. *State,* holding that a conviction of the lessor of the two
crimes would not be set aside because of an instruction in-
correct in that it directed a verdict of manslaughter upon
the facts which would have warranted a conviction of mur-
der.   Then came the case of *Parker* v. *State,* 102 Miss. 113,
58 So. 978, where the court, under facts showing that de-
fendant was either guilty of murder or innocent, held that
such an instruction was reversible error, the case citing no
authorities in support of its holding and making no men-
tion of prior rulings on the question which were in direct
conflict with the doctrine there announced.   Then followed
the case of *Huston* v. *State,* 105 Miss. 413, 62 So. 421, where
the court, which was at that time composed of the same
personnel as when the case of *Parker* v. *State* was decided,
in reviewing their decision in the Parker case, expressly
overruled it, and likewise all other cases holding to the
same effect, and announced the correct rule to be that of
the *Moore case.*   The *Rester case,* 110 Miss. 689, 70 So. 881,
is the latest expression of our court on the proposition, and
falls within the line of cases illustrated by the *Virgil case*
and which expressly overrules the cases subscribing to the
doctrine announced by the *Huston case* erroneously stat-
ing that the ruling in the *Huston case* was a new and rad-
ical departure from the previous holdings of the court,

the same doctrine having been previously announced in the *Rolls case,* the *Lanier case,* the *Powers case,* the *Moore case,* and the *Virgil case; Parker* v. *State,* 102 Miss. 113, 58 So. 978, being the only case holding to the contrary.

It might be that in some cases such an instruction would be harmful to defendant, but the evil effect of an ironclad rule, making it so in all cases, is apparent. In the case at bar, where the instruction simply told the jury that it might, among other verdicts, bring in one of manslaughter, the self-defense theory being clearly expounded in instructions favorable to appellant, the jury wholly rejected the self-defense theory, and decided that defendant was guilty of an unlawful and felonious homicide. After the jury had gone this far with their deliberations, then it devolved upon them to say whether the "unlawful homicide" was murder or manslaughter. The court said that they might call it manslaughter, and so, tempering justice with mercy, they labeled the unlawful homicide "manslaughter" when the facts showed murder. The error, if any, in granting the manslaughter instruction saved appellant from a conviction of murder, and was therefore favorable to her, and of this she cannot complain.

The general rule laid down in the *Huston case, supra,* finds support in 17 C. J., p. 359, par 3729, and page 361, par. 3732, and also in 16 C. J., p. 1024, par. 2452.

The following are among authorities from other states which hold that, when accused is convicted of a lesser crime than the evidence warrants, the verdict will be sustained against the objection that it is a compromise: *State* v. *Hagan,* 131 N. C. 802, 42 S. E. 901; *State* v. *Quick,* 150 N. C. 820, 64 S. E. 168; *State* v. *Fowler,* 151 N. C. 731, 66 S. E. 567; *Warren* v. *State,* 6 Okl. Cr. 1, 115 Pac. 812; 34 L. R. A. (N. S. 1121; *Johns* v. *State,* 8 Okl. Cr. 585, 129 Pac. 451; *Ryan* v. *State,* 8 Okl. Cr. 623, 129 Pac. 685; *Justice* v. *State,* 6 Ga. App. 330, 64 S. E. 1004; *State* v. *Phinney,* 13 Idaho, 307, 89 Pac. 634, 12 L. R. A. (N. S.) 935, 12 Ann. Cas. 1079; *Powell* v. *State,* 5 Tex. App. 234; *Campbell* v. *State,* 65 Tex. Cr. R. 418, 144

S. W. 966; *Gatlin* v. *State,* 86 Tex. Cr. R. 339, 217 S. W. 698; *Price* v. *State,* 82 Ark. 25, 100 S. W. 74; *Sexton* v. *State,* 91 Ark. 589, 121 S. W. 1075; *Snow* v. *State,* 140 Ark. 7, 215 S. W. 3; *State* v. *Burns,* 263 Mo. 594, 173 S. W. 1070; *State* v. *Mittner,* 247 Mo. 577, 153 S. W. 1020; *State* v. *Berkley,* 109 Mo. 665, 19 S. W. 192; *State* v. *Haugh,* 156 Iowa, 639, 137 N. W. 917; *State* v. *Dimmitt,* 184 Iowa, 870, 169 N. W. 137; *Bias* v. *State,* 3 Ind. T. 27, 53 S. W. 471; *State* v. *Underwood,* 35 Wash. 568, 77 Pac. 863.

Under supreme court rule 11 (72 So. vii) it must affirmatively appear from the record that appellant has been prejudiced before a misdirection of the jury will cause a reversal.

### IV and V.

In the event the judgment of the court below should be reversed, should the case be remanded for a new trial, or should the appellant be discharged? In the event the cause is remanded, can the appellant be again tried for the crime of murder?

A discussion of this proposition necessarily brings into review the "former jeopardy" clause of our state Constitution, same being section 22 thereof, and also the rule laid down by our court in the *Walker case,* 123 Miss. 517, 86 So. 337, and prior decisions of our court holding to the same effect. The rule now in force, as announced in *Rester* v. *State,* 110 Miss. 689, 70 So. 881, is that it constitutes reversible error to grant an instruction on manslaughter, where the proof shows murder or not guilty. There is also a line of authorities illustrated by the case of *Hurt* v. *State,* 25 Miss. 378, 59 Am. Dec. 225, which hold that, on a prosecution for murder, a finding by the jury that the accused is guilty of manslaughter, is an "implied" acquittal of the charge of murder. Other cases holding to the same effect are : *Morris* v. *State,* 8 Smedes & M. 762; *Rolls* v. *State,* 52 Miss. 391; *Powers* v. *State,* 83 Miss. 691, 36 So. 6; *Walker* v. *State,* 123 Miss. 517, 86 So. 337.

The Constitution of 1890 materially modified the "former jeopardy" clause in previous Constitutions, so that section 22 of the present Constitution is now in the following words:

"Section 22. No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution."

Among the cases holding that, where accused is charged with murder and convicted of manslaughter, and his case is reversed on his appeal, he cannot again be put on trial for the greater offense, is that of *Morris* v. *State,* 8 Smedes & M. 762, which was decided in 1847. The court there held that a verdict of guilty on one count was tantamount to an acquittal on the other counts in the indictment, but at that time the Constitution of 1832 was in force, and the former jeopardy clause was not mentioned in the opinion. Also, each count in the indictment was for a separate offense, and not for different grades or degrees of the same offense. The *Rolls case,* 52 Miss 391, cites no authorities and gives no reasons and the portion of the opinion dealing with this part is mere dictum. The Powers case was decided in 1903, when the Constitution of 1890 was in effect, but apparently the court's attention was not called to the material change of the former jeopardy clause after the decision of the Rolls case there relied on. The case of *Walker* v. *State,* 123 Miss. 517, 86 So. 337, makes no mention of the material change in the former jeopardy clause by the Constitution of 1890, and was apparently decided upon the idea that our Constitution in this respect was then as it stood in 1869 and prior Constitutions.

If it be conceded for the sake of argument that the *Hurt case,* 25 Miss. 378, 59 Am. Dec. 225, and the *Rolls case,* 52 Miss. 591, is good law under the Constitutions of 1832 and 1869 respectively, we must admit that the *Powers case,* 83 Miss. 691, 36 So. 6, and the *Walker case,* 123 Miss. 517, 86 So. 337, which plant themselves upon the Rolls case

and the Hurt case, must fall in view of the explicit provisions of section 22 of the present Constitution, which provides that there must be an actual conviction or acquittal to bar another prosecution. The people by this express injunction, said that nothing less than an actual acquittal could bar another prosecution, and they have fixed as a condition precedent what must exist before former jeopardy will operate as a bar. It is their Constitution, their bill of rights, and they have fixed this condition and attached it to the Constitution of 1890, apparently because of the construction placed on the former jeopardy clauses of previous Constitutions. If this is not the reason, then why the amendment, and why the use of the word "actual" preceding the words "acquittal and conviction?"

To hold that other than an actual acquittal or conviction would bar another prosecution would be to hold the amendment a nullity so far as the word "actual" is concerned. The Powers case and the Walker case are condemned by section 22 of the Constitution, being contrary to the express provisions thereof, and therefore should be overruled.

The soundness of the rule under discussion was seriously questioned in the case of *Parker* v. *State,* 102 Miss. 113, 58 So. 978.

It might be argued that the purpose of the amendment was to correct the evil flowing from the decision of the *Teat case,* 53 Miss. 349, 24 Am. Rep. 708, where it was decided that the accused had been placed in jeopardy when the trial had fairly been entered upon, and other cases which allowed the accused to escape a just punishment through technicalities. While this may be true, it is evident that the framers of the amendment were also seeking to remedy the anomalous situation then resulting from the holding in the Hurt case. If not, then why the word "actual?" Because all other conceivable causes would have been remedied if the amendment had only read, "but there must be a conviction or acquittal to bar another

prosecution." If this was the only remedy sought to be
made, then the word "actual" preceding the words "con-
viction and acquittal" would not have been needed. It is
evident that, since the Hurt case had held that an implied
acquittal of murder was ·a complete bar to a subsequent
prosecution of murder, the word "actual" was employed
to correct this very situation.

Aside from the fact that the Constitution provides that
there must be an "actual" acquittal or conviction, the lead-
ing authorities seem to reject the Mississippi rule, although
the cases are by no means in harmony. Among the texts
on criminal law which state an opposite rule to that
adopted by our court are: Watson on the Constitution (4th
Ed), vol. 2, p. 1442; Story on the Constitution (4th
Ed.), vol. 2, par. 1787; 8 R. C. L., p. 161, par. 153 on
Criminal Law; 12 C. J., p. 1204, par. 937, on Constitutional
Law; 16 C. J., p. 261, par. 436, where a discussion of both
rules is found.

Among the cases holding that, if the defendant appeals
from a conviction of the lower crime, he thereby waives
the implied acquittal on the higher crime, and that if re-
versed his position is as if no trial had been had, are:
Trono v. U. S., 199 U. S. 521, 26 Sup. Ct. 121, 50 L. Ed.
292, 4 Ann. Cas. 773; U. S. v. Gonzales (D. C.), 206 Fed.
239; Brantley v. State, 132 Ga. 573, 64 S. E. 676, 22 L. R.
A. (N. S.) 959, 131 Am. St. Rep. 218, 16 Ann. Cas. 1203;
Id., 217 U. S. 284, 30 Sup. Ct. 514, 54 L. Ed. 768; Perdue
v. State, 134 Ga. 300, 67 S. E. 810; State v. Matthews, 142
N. C. 621, 58 S. E. 342, which expressly overrules former
holdings and follows Trono v. U. S., supra; State v. Bil-
lings, 140 Mo. 193, 41 S. W. 778; State v. Ash, 68 Wash.
194, 122 Pac. 995, 39 L. R. A. (N. S.) 611; State v. Brad-
ley, 67 Vt. 465, 32 Atl. 238; Briggs v. Commonwealth, 82
Va. 554; Bohanan v. State, 18 Neb. 57, 24 N. W. 390, 53
Am. Rep. 791; State v. Behimer, 20 Ohio St. 572; 4 Ann.
Cas. 773; 14 Am. Rep. 752; Gibson v. Somers, 31 Nev. 531,
103 Pac. 1073, 24 L. R. A. (N. S.) 504, 135 Am. St. Rep.
700; State v. Morrison, 67 Kan. 144, 72 Pac. 554; Young

v. *People*, 54 Colo. 293, 130 Pac. 1011; *State* v. *Gillis*, 73
S. C. 318, 53 S. E. 487, 5 L. R. A. (N. S.) 571, 114 Am.
St. Rep. 95, 6 Ann. Cas. 993; *Veatch* v. *State*, 60 Ind. 291;
*State* v. *Kessler*, 15 Utah, 142, 49 Pac. 293, 62 Am. St.
Rep. 911; *Turner* v. *Territory*, 15 Okl. 557, 82 Pac. 650;
*People* v. *Palmer*, 109 N. Y. 413, 17 N. E. 213, 4 Am. St.
Rep. 477; *State* v. *Arnold*, 83 Ky. 1, 4 Am. St. Rep. 114.

The *Hurt case, supra*, cannot stand for these reasons:
First, because of the express prohibition of section 22 of
our Constitution, requiring an "actual" acquittal to bar
another prosecution. Second, because the judgment of
conviction of manslaughter is an entirely and inseparable,
and if reversed the "implied" acquittal goes with it, there
being nothing left upon which it can stand. Third, ap-
pellant waives the constitutional guaranty against "for-
mer jeopardy" in electing to appeal from the conviction
of manslaughter, and thereby forfeits any or whatever
rights he may have in the "implied" acquittal of murder.

*Parker & Shivers*, for appellant.

Appellant relied in her former brief, on Mississippi
cases, i. e. *Rester* v. *State*, 70 So. 881; *Walker* v. *State*,
86 So. 337; *Richardson* v. *State*, 85 So. 186. To these
authorities in support of appellant's contention we wish
to add the further authority: *Stovall* v. *State*, 94 Miss.
373, 47 So. 479. This case, we think strikingly similar to
the case at bar, and one which will sustain appellant's con-
tention conclusively.

Further reference to the bare question as to whether the
court committed error in charging the jury on man-
slaughter; we wish to call attention to the fact that there
is no diversity of opinion or authority on the question,
that where there is no evidence of manslaughter it is er-
ror on the part of the court to give an instruction on man-
slaughter. And while we have two lines of authorities
in Mississippi, and in practically every other state, on
the question of whether such error is or is not harmless,

there is no difference in our authorities or the text laws that the granting of such instruction is error. The authorities cited on the question treated in this brief, both for and against, go entirely to the question of whether the error is harmful, 'or harmless, and none undertake to hold that it is not error, to give the instruction.

Second, in the event the foregoing question should be answered in the affirmative, was the error in granting the instruction favorable or prejudicial to the defendant? In other words was it harmless? When we come to deal with the above question as suggested by the court, in its request for additional briefs, we find that we are brought to consider rule 11 of the court, and the line of cases illustrated by: *Huston* v. *State,* 105 Miss. 413, 62 So. 422; *Rester* v. *State,* 110 Miss. 689, 70 So. 881.

The line of authorities in Mississippi holding that the granting of a manslaughter instruction on a trial for murder is prejudicial to the defendant, we find in the following authorities: *Virgil* v. *State,* 63 Miss. 317; *Johnson* v. *State,* 78 Miss. 627, 29 So. 515; *Stovall* v. *State,* 94 Miss. 373, 47 So. 479; *Hannah* v. *State,* 80 Miss. 375, 39 So. 855; *Parker* v. *State,* 102 Miss. 113, 48 So. 928; *Rester* v. *State,* 110 Miss. 689, 70 So. 881; *Richardson* v. *State,* 85 So. 186; *Walker* v. *State,* 86 So. 337.

The line of authorities in Mississippi tending to hold the contrary to the above rule appears in the following cases, or it is claimed by the state that they hold the contrary: *Rolls* v. *State,* 52 Miss. 391; *Lanier* v. *State,* 57 Miss. 102; *Powers* v. *State,* 83 Miss. 691, 30 So. 6; *Moore* v. *State,* 86 Miss. 160, 38 So. 504; *Huston* v. *State,* 105 Miss. 413, 62 So. 421. The appellant later in this brief proposes to show that the learned attorney general is in error in his brief, when he takes the position that all of the above cases sustain the contrary rule advocated by him in his brief.

The question which the court is now interested in is, which of the above lines of authority this state should plant itself upon, as we gather from its statement, that

it will be called upon to determine whether the Rester case should be overruled or modified.

We have been favored with the able brief of the attorney general submitted in this case; we have read same with a great deal of interest, as well as admiration. We recognize the ability, of the learned attorney-general to find and present authorities supporting the line of Mississippi decisions, claimed by him as announced, that such an instruction is not prejudicial to a defendant following the announcement of the case of *Huston* v. *State, supra.*

In answering this brief, so far as the question of authority is concerned, we could cite authorities without number from equally as many states upholding the rule that such an instruction is prejudicial. This is conceded by textwriters and courts, including our court. A fair example of this will be found from the fact that in the able brief of the attorney-general, page 18, we find that he cites as supporting the rule that such an instruction is not prejudicial. *Powell* v. *State,* 5 Tex. Cr. App. 334; *Campbell* v. *State,* 65 Tex. Cr. App. 418, 144 S. W. 696; *Gatlin* v. *State,* (Tex.), 217 S. W. 698. Wherein the case of *Rester* v. *The State,* we find cited by the learned Judge Stevens in his able opinion, the case of *Flynn* v. *State,* 43 Tex. Cr. Rep. 407, 66 S. W. 551. Also on the same page of attorney-general's brief, we find cited: *Justice* v. *State,* 6 Ga. App. —, 64 S. E. 1004. While one of the leading cases relied on by Judge Stevens in support of the decision in the Rester case is: *Bates* v. *State,* 4 Ga. App. 486, 61 S. E. 88.

Judge Stevens in his opinion says that it is based on the well-reasoned cases of the Georgia court, and he further makes the observation: "Our court is not alone in the holding announced in *Parker* v. *State, supra,* and along a line of well-reasoned cases decided by our court prior to the *Parker case, supra."* From a close study of the rulings of the various courts on the question, whether the granting of a manslaughter instruction to the state in a murder case, where there is no evidence to support same

is prejudicial to the defendant, it will be found that there is not only a diversity of opinion between the rules of the different states, but that there is a diversity of the holdings within each state, as is above shown from the Georgia and Texas courts, as well as that of Mississippi, and it is conceded by textwriters, and courts that there is a diversity of authority on the question.

We submit that while it is conceded that the authorities are divided on this subject, a citation of the authorities either for or against, will not be of special benefit to the court, since the authorities of different states would most likely be based on the rules of procedure, the constitution and statutes of the respective states; that the matter the court will be most interested in would be the reason supporting the line of authority which this court should adopt, and follow.

*C. E. Dorroh,* and *D. C. Enochs,* Assistants Attorney-General, for the state.

The appellant is guilty of the crime of murder, or he is innocent of any crime. That being true, it was error for the trial court to grant an instruction that the jury might convict him of manslaughter, if the jury believed from the evidence the facts necessary to constitute that crime, there being no evidence from which to believe such facts. We do not understand that any court holds such an instruction proper in such case.

Now, as to whether such error on the part of a trial court is favorable or prejudicial to the accused; some courts say it is favorable, others, that it is prejudicial. This court, in *Huston's case,* 102 Miss. 113, said it was favorable, but in *Parker's case,* 58 So. 978, that it was prejudicial. The Huston case overruled the Parker case, but later this court, in *Rester's case,* 110 Miss. 689, over-ruled the Huston case, and restored and reaffirmed the announcement of the law in the Parker case.

The courts of last resort of the other states are not in accord with each other, whether the instruction in such case, is harmful or harmless. In *Powell* v. *State,* 5 Tex. Ct. App. 234, wherein Powell, who was convicted of manslaughter on evidence that warranted his conviction of murder only, complained of the granting of a manslaughter instruction the court .said: "This court has never held, and the learned counsel for appellant have cited no case where it has been decided, that a judgment should be reversed because the court gave the defendant the benefit of a charge on a less offense than the evidence showed he was guilty of."

Another Texas case, on the subject is that of *Chambers* v. *State,* 86 S. W. 752, wherein the appellant was convicted of manslaughter on evidence warranting a conviction of murder only and complained that the trial court erred in granting a manslaughter instruction. The court in that case said: "Appellant insists that the court should have told the jury, under said facts, defendant would be guilty of murder and not manslaughter. Perhaps this is correct, but appellant cannot complain of it, because it is more favorable to him than the facts authorized." Other cases holding a manslaughter instruction in such case to be harmless, are *State* v. *Quick,* (N. C.), 64 S. E. 168; *Barbee* v. *State,* (Tex.), 124 S. W. 961; *People* v. *Roselle,* (Cal.), 129 Pac. 477; and *State* v. *Quinn* (Wash.), 105 Pac. 819.

The supreme court of Ohio views this matter differently from the above court, and in *Dresback* v. *State,* 38 Oh. St. Rep. 365, 369, said: If the jury found him guilty, it was their duty to find him guilty of murder in the first degree; but if the charge was not proved, he was entitled to an acquittal." The court, however, instructed the jury that they might, consistently with their duty, find him guilty of murder in the second degree or manslaughter. . . .

It is claimed, that the accused was not prejudiced by the erroneous charge. We have all the evidence before us, and cannot say so. The evidence was wholly circum-

stantial, and we are unable to say the jury might not have acquitted him had they been properly instructed.

And the supreme court of Missouri, in *State* v. *Punshon,* 124 Mo. 448, 27 S. W. 111 in a similar case said: "Another contention is that the court erred in instructing the jury on manslaughter in the first degree. That there was no evidence whatever upon which to predicate such an instruction is admitted by the attorney general in his printed brief, but he argues that of this defendant cannot complain because we presume, of his conviction of a less offense than that for which he was indicted and put upon trial. We do not understand this to be the law. While, by statute, it is made the duty of the court to instruct upon every phase of the case warranted by the evidence it is not its duty to instruct upon any grade of offense, not authorized by the evidence, and it is error to do so. *State* v. *Allen,* 116 Mo. 548; *State* v. *Herrell,* 97 Mo. 105; *State* v. *Wilson,* 88 Mo. 13; *State* v. *Turlington,* 102 Mo. 642. In *State* v. *Starr,* 38 Mo. 272, it is said: "It is the duty of the court to instruct the jury with reference to the testimony in the case, and where the evidence all tends to prove an offense, it is wrong to mislead the jury by giving instruction in relation to a different one." The instruction only had a tendency to mislead the jury, which it is evident from the facts in this case, as disclosed by the record, it did so. Defendant was either guilty of murder in the first degree, or not guilty of any offense at all, and the instructions should have been confined to that offense.

We do not understand that the courts that permit a verdict of manslaughter to stand when the evidence only warranted a conviction of murder, hold that the verdict is responsive to the issue being tried, but only let it stand on the ground that the defendant could have been convicted of murder, and was mercifully let off by the jury at manslaughter. It is by that process of reasoning that they reach the conclusion that the manslaughter instruction is harmless. The reasoning in the *Huston case, supra,* is a fair sample of the reasoning in such cases.

The Georgia court of appeals, in *Watts* v. *State,* 3 Ga. App. 606, has condemned such a verdict as in the case at bar in no uncertain terms. And the supreme court of Wisconsin in *Pliemling* v. *State,* 46 Wis. 516, 523, has paid its respect to juries that render verdicts for lesser offenses on evidence warranting conviction of higher offenses only, and stated the duty of courts in respect to such verdicts. *The State* v. *Hammond, supra,* and *The State* v. *Erickson,* 45 Wis. 86.

The states of Florida and Texas, the latter in recent years, now have statutes providing that persons convicted of lesser constituent offenses under indictments for higher offenses, cannot be awarded new trial for want of evidence, if the evidence warranted a conviction of the higher. *McCoy* v. *State* (Fla), 224 So. 285; *Crowder* v. *State* (Tex.), 180 S. W. 706. But Mississippi has no such statute. Whether such statute would be constitutional it is not necessary to decide, since we have no such statute. Mississippi has a statute, to-wit, section 1499, Code 1906, which provides that on an indictment for any offense, the jury may find the defendant guilty of the offense as charged, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he was charged in the indictment. But we do not understand that this statute permits a conviction, without evidence to sustain the particular offense of which one may be convicted. We do not think the statute attempts to authorize a conviction on the indictment alone, but only on evidence providing every element necessary to constitute the particular crime of which the jury may convict.

A conviction of murder, on an indictment for murder, when the evidence only warranted a conviction of manslaughter, will be reversed by a court of last resort in any jurisdiction. And a conviction of manslaughter, on an indictment for manslaughter, when the evidence only warranted a conviction of murder, will be reversed by a court of last resort in any jurisdiction. But a conviction of

manslaughter, on an indictment for murder, when the evidence only warranted a conviction of murder, will not be reversed by the court of last resort in all jurisdictions.

It is hard to conceive how the same learned judge who wrote the opinion in the *Parker case,* 58 So. 978, could have written the opinion in the Huston case. The two opinions, in our opinion, set forth the reason for and against the rule here discussed better than in any other cases that we have been able to find. If the Huston case had had an error in it other than the manslaughter instruction, as was the case in the first *Powers case,* 74 Miss. 777, on a new trial, it would have presented a similar case to the second *Powers case,* 83 Miss. 691.

The rule in the Huston case cannot be sustained by logical reasoning. In our opinion, the announcement of such a rule of law, certainly in our own state, is the result of an effort, consciously or unconsciously, to avoid the palpably unjust consequences of an erroneous, though not recognized as such construction of the once in jeopardy clause of the state constitution.

We come now to the real cause of all the trouble, to-wit, the erroneous construction of the once in jeopardy clause of the Constitution. This constitutional guarantee that our lives or liberty shall not be twice placed in jeopardy for the same offense, is a very sacred right vouchsafed to us by the Constitution to be sacredly preserved to us by our judges sitting in our courts of justice. It is no less sacred, and no less sacredly to be guarded and preserved, than the right of trial by jury, which cost our ancestors so much blood and treasure. But this court, we respectfully submit, has misconstrued this guarantee, in our humble opinion. It would seem to us to be evident that a construction of this guarantee, the consequence of which is the discharge of the appellant in the case at bar, as in the *Walker case, supra,* of the avoidance of which necessitates such decisions as in the Powers and Huston cases, must be wrong. Under the present construction by this court of this guarantee, the law in reference to cases

such as the one at bar, may be stated at this time to be: That a defendant, tried on a valid indictment for a specific offense, in a court of competent jurisdiction, and convicted of a lesser constituent offense, is forever acquitted of the higher offense, notwithstanding the judgment of conviction of the lesser offense is reversed on appeal by the defendant, and that too, notwithstanding the reversal is for want of evidence to sustain the conviction of the lesser offense, although the evidence warranted a conviction of a higher offense. Of course, if this is the law, the conviction in the case at bar must be reversed, and the appellant must be discharged.

But in our humble personal opinion, unsupported by a single authority on earth, so far as we can discover, the true announcement of the law, which safeguards to the accused his constitutional guarantee against being placed twice in jeopardy for the same offense, as well as safeguards him against punishment for that of which he is innocent, and at the same time protects the public against crime by punishment of criminals, may be stated as follows: That a defendant, tried on a valid indictment for a specific offense, in a court of competent jurisdiction, and convicted of a lesser constituent offense, is forever acquitted of the higher offense, notwithstanding the judgment of conviction of the lesser offense is reversed on an appeal by the defendant, if the evidence warranted the conviction of the lesser offense, but the conviction thereof was reversed for errors attending the trial. Of course, if this is the law, the conviction in the case at bar must be reversed, and the cause remanded for the appellant to be again tried upon the indictment, as if there had been no previous trial.

It is generally conceded, that the defendant waives his constitutional guarantee against twice being placed in jeopardy for the same offense, as to the particular offense of which he was convicted, when he obtains a new trial, whether by motion in the court in which he was convicted, or by appeal to a higher court; otherwise he could not be

tried again at all. "If so," says the Georgia supreme court in *Brantley* v. *State,* 132 Ga. 573, 64 S. E. 676, 22 L. R. A. (N. S.) 959, "Then whether the waiver merely has the effect of allowing a new trial as to the lesser offense, or on the indictment, as if there had been no previous trial, is a matter of degree and of construction of the extent of the waiver which the law declares the accused makes in asking for a new trial.

Now, the courts of last resort that have passed upon this question are in hopeless conflict as to the extent of this waiver by the defendant of his constitutional guarantee, when he secures, by motion or appeal, the setting aside of his conviction of a lesser constituent offense than that charged in the indictment. The rock upon which they split, is, whether the judgment is an entirety or not. Those courts that have reached the conclusion that the judgment is an entirety, of course, have decided that the waiver is co-extensive with the judgment, and that the defendant can be tried again on the indictment, as if there had been no previous trial. And those courts that have reached the conclusion that the judgment is not an entirety, have decided that the waiver is not co-extensive with the judgment, but is limited to the judgment of conviction only.

Before proceeding further, we desire to say, in so far as they are involved in the case at bar, that the *Hurt case,* 25 Miss. 387 is right; the *Parker Case,* 102 Miss. 113 right in part and wrong in part; the *Huston case,* 105 Miss. 413, altogether wrong; the *Rester case,* 110, Miss. 689, right and the *Walker case,* 123 Miss. 517, right in part and wrong in part.

SYKES, P. J., delivered the opinion of the court.

Opinion in No. 22290, *Calicoat* v. *State.*

The appellant (defendant in the circuit court) was indicted for murder, convicted of manslaughter, and by the court sentenced to a term of five years in the penitentiary; from which judgment this appeal is prosecuted.

At the request of the district attorney a manslaughter instruction was given for the state. The appellant shot and killed the deceased with a pistol. He admitted the shooting, but claimed he did it in self-defense. There was no testimony whatever of an altercation between the appellant and the deceased prior to the shooting. No hot words or insulting epithets passed between them. Under the testimony it was either a case of murder or justifiable homicide, committed in self-defense. Presumably acting upon the instruction given for the state, the jury returned a verdict of manslaughter. The principal assignment of error, and in fact the only one which merits any consideration, is whether or not the giving of the manslaughter instruction constituted reversible error.

Under the decision of this court in the case of *Rester* v. *State,* 110 Miss. 689, 70 So. 881, and other cases which follow that one, this contention of the appellant is well taken. In this case, however, the court has considered the advisability of overruling the Rester case, and returning to the principles announced in the case of *Huston* v. *State,* 105 Miss. 413, 62 So. 421.

Since the Rester case was decided this court in following it has sometimes reversed and remanded cases, where, under the testimony, the defendant was guilty of murder or nothing, and where there was no element of manslaughter shown by the testimony. In a number of these cases which were remanded it became the duty of the circuit court to discharge the defendants because of lack of evidence upon which to base a verdict of manslaughter. In several instances this court here has discharged a defendant when it was satisfied that the state could not make out a case of manslaughter. The practical effect of the decision in the Rester case has certainly in some instances resulted in guilty parties going unwhipped of justice. This result has had great weight with the court in its conclusion to overrule the Rester case and return to the doctrine announced in the Huston case. There is authority in Mississippi to sustain the holdings of the court in each of these cases.

The Rester case is in line with the *Parker case,* 102 Miss. 113, 58 So. 978, and *Johnson case,* 78 Miss. 627, 29 So. 515. The principles enunciated in the Huston case are supported by the *Rolls case,* 52 Miss. 391, *Powers case,* 83 Miss, 691, 36 So. 6, and *Moores case,* 86 Miss. 160, 38 So. 504. Each of these cases is also sustained by authority from without the state. However, the weight of authority seems to favor the decision in the Huston case.

The question here presented for our determination, and which we decide, is this: Where a person is slain by another, and the slaying is admitted by the defendant, whose plea is self-defense, then, on an indictment for murder, and a conviction of manslaughter, where the testimony would sustain a verdict of guilty of murder, and where there are no elements of manslaughter involved, it is harmless error, of which the defendant cannot complain, that a jury saw fit to find him guilty of manslaughter instead of murder. Or, stated briefly in a different way, where the killing is admitted, and only the nature and quality of the act are to be determined, a manslaughter instruction under the above circumstances is harmless error. Before this court will reverse a cause it must be satisfied of two facts, namely, that an error in favor of the appellee was committed in the trial of the cause by the court below, and, second, that this error was prejudicial to the rights of the appellant. *Jones* v. *State,* 104 Miss. 871, 61 So. 979; rule 11 of this court (72 So. vii).

The verdict of the jury in this case found that the appellant was guilty of an unlawful homicide. By this verdict they rejected in whole the testimony of the appellant that he shot in self-defense. The mistake of the jury was in finding that the killing was done in the heat of passion, instead of with malice aforethought; for which mistake of the jury the appellant is now under sentence to serve a term of five years in the penitentiary, whereas, if this mistake had not been made, he would either have been hanged or sent to the penitentiary for life. Under the Huston case this error was certainly not prejudicial to this ap-

pellant. Without approving the facts upon which the opinion in the Huston case rests, we adopt this portion of the Huston case as correctly stating the rule which we shall follow in this case.

"We proceed now to analyze the verdict. The essential and potent fact is that the jury believed, and so said by their verdict, that the defendant was guilty of an unlawful and felonious homicide. To reach this conclusion, the jury necessarily and entirely rejected the evidence given on behalf of defendant. This is true, because if they had any reasonable doubt about the truthfulness of any, or all, of this evidence, it was the duty of the jury to say not guilty. But the jury, by its verdict, said guilty, and ignorantly named the crime manslaughter. First, defendant was found guilty; second, the jury say he was guilty of manslaughter. If guilty, he should be punished for murder. That he was guilty was the solemn finding of the jury; but the jury went further, and said that he was guilty of the lesser crime, and it is of this that appellant complains.

"It seems to us that this complaint overlooks, or ignores, the fact that the jury rejected all of defendant's testimony, and pronounced him guilty, and that the jury could not have reached this verdict, unless they did reject the defendant's theory, and unless they did adopt and believe the state's theory of the facts. It is a fact that the jury, for some reason satisfactory to them, thought defendant was not guilty of the higher crime, which error of the jury resulted in a five-year sentence instead of a life sentence. So it seems, in the last analysis, the complaint is that the verdict, to satisfy the law, should have been for murder, and that defendant, by the verdict rendered, was deprived of his legal right to spend the balance of his days in the penitentiary.

"Technically the contention of defendant may be flawless; but practically we think it is without substance or merit. Logically the defendant is not complaining of any injury to himself, but insists that the law has been per-

verted in his interest, and to this he cannot give his consent. Upon an indictment charging murder, the person charged may be legally convicted of manslaughter, provided there is evidence justifying the belief that the defendant is guilty of the lesser crime. This is admitted; but it is contended that there was no evidence even tending to prove manslaughter. The reply is that there was abundant evidence to prove murder . . . and we are unable to see how he can complain of the instruction on manslaughter, or of the verdict of the jury."

This opinion is in no wise conflicting with the opinion of the court in the case of *Virgil* v. *State*, 63 Miss. 317. In the Virgil case the indictment was for the murder of an infant by burning a house (arson). The sole issue in that case was the identity of the guilty party. The Virgil case in no wise attempted to modify or overrule the *Rolls case*, 52 Miss. 391, which is in accord with this opinion.

Since our views lead to an affirmance of the case, we are not here presented with other questions argued by counsel at the request of the court in case it should be reversed and remanded.

*Affirmed.*

Opinion in No. 22824, *Strickland* v. *State*.

SYKES, P. J., delivered the opinion of the court.

The same questions are presented by this record as in that of *Callaway Calicoat* v. *State*, this day decided by us. For the reasons given in the Callaway Calicoat case, this case will be affirmed.

*Affirmed.*

DISSENTING OPINION IN *Calicoat* v. *State*.

COOK, J. (dissenting).

I am unable to agree with the opinion of the majority of the court that, although there is no element of man-

slaughter shown by the evidence, it is harmless error to grant an instruction submitting to the jury the issue of manslaughter. I am unable to agree with the reasoning that a defendant is not prejudiced by an instruction which has a tendency to mislead the jury, and which has, in fact, so misled the jury as to cause the defendant to be convicted of a crime of which he is innocent. I am aware of the fact that there is ample authority to sustain the view that under such circumstances a manslaughter instruction is harmless; but these cases proceed upon the theory that the defendant cannot complain for the reason that under the evidence he might have been convicted of the higher crime of murder. While it is true that under the evidence in this case the defendant might have been convicted of murder, the fact is that he had not been so convicted, and any conclusion that, if the jury had been guided only by instructions correctly announcing the law applicable to the particular facts, the defendant would have been convicted of murder, is the merest speculation. The statement found in numerous decisions that in convicting a defendant of manslaughter the jury rejects the defense offered by him is theoretically true, but as a practical proposition we are bound to recognize the fact that verdicts are oftentimes reached by compromise; and in a case where the facts present no element of manslaughter an instruction submitting that issue is permission, if not an invitation, for the jury to compose any differences or doubts they may have by finding the defendant guilty of a crime not involved, and which is supported by no evidence. I think the defendant should be tried upon the issues made by the evidence, and that the doctrine announced in the cases of *Parker* v. *State,* 102 Miss. 113, 58 So. 978, and *Rester* v. *State,* 110 Miss. 689, 70 So. 881, should be followed.

I fully appreciate the fact that, in view of the holdings of this court that a conviction of manslaughter is an implied acquittal of murder, a serious evil has resulted in some instances from the doctrine announced in the Rester case, but I think this is due to the fact that the courts have

failed to give proper effect and application to that clause in the former jeopardy provision of our Constitution which appeared for the first time in the Constitution of 1890, and which provides that—"There must be an actual acquittal or conviction on the merits to bar another prosecution." Section 22, Const. 1890.

However, since a majority of the court has reached the conclusion that this case should be affirmed, that question is not now presented, and therefore I will not elaborate my views on this question.

CONCURRING AND DISSENTING OPINION IN *Calicoat* AND *Strickland* cases.

ETHRIDGE, J.

These cases were heard and decided as companion cases, and the reporter is requested to report them as companion cases. I desire to concur in the result reached in the case of *Calicoat* v. *State*, No. 22290, for the reason that in my opinion the jury on the evidence in the record could not rightfully acquit the defendant if they are, as required by law to be, persons of good intelligence, sound judgment, and fair character, because the circumstances even as detailed by the defendant do not make a case of self-defense, and the doctrine announced in *Huston* v. *State*, 105 Miss. 413, 62 So. 421, rightfully applies to the facts in this case. In the other case of *Strickland* v. *State*, No. 22824, I think on the evidence of the defendant her rights were prejudiced by the injection of the manslaughter issue. I cannot say with confidence that the jury would not have acquitted had the issue been limited, as it ought to have been, to murder or self-defense.

I briefed the case for the state in *Huston* v. *State*, 105 Miss. 413, 62 So. 421, and think that case is rightly decided on its facts. The facts are not set forth in the report, and very imperfectly in the abstract of the brief, but I think there could be no doubt that Huston was the guilty agent in bringing about the death of the deceased, and that the

facts in the record will demonstrate that he alone was the perpetrator of the deed. There had been some colloquy between the deceased and the defendant about some one stealing a hat. The question has been elaborately argued before us in the present case, and ably briefed as to what result should follow a conviction of manslaughter in a case where the evidence either showed murder or self-defense, and as to whether such judgment should be affirmed on the ground of harmless error, or whether it should be reversed and the cause tried anew on the original indictment. After a very elaborate and thoughtful consideration of the case, and a review of the authorities, I think the safer and better rule will be to hold that a judgment should be reversed and a new trial awarded on the original indictment where the court is not able to say with confidence that the jury would not have acquitted the defendant had the issues been properly limited and the instruction for manslaughter not given.

I base my reasons for departing from the rule announced in the case of *Rolls* v. *State,* 52 Miss. 391, and the case of *Hurt* v. *State,* 25 Miss. 378, 59 Am. Dec. 225, and other cases following those cases, upon the ground that section 22 of the present Constitution, providing, as it does, "but there must be an actual acquittal or conviction on the merits to bar another prosecution," was intended to remedy the situation brought about by previous decisions construing the Constitutions of 1817, 1832, and 1869, which in substance merely provided, "No person's life or liberty shall be twice placed in jeopardy for the same offense." It will be noted from the Constitution that the acquittal or conviction must be "actual," and the word "actual" in my opinion is used in contradistinction from "implied" or "constructive." It will also be noted that the provision is for "actual acquittal" or "actual conviction" and is different in substance from a mere trial on the merits. In the *Hurt case, supra,* and in other cases following it, the acquittal of murder on the conviction of manslaughter was one implied from the verdict. The verdict in a conviction of manslaughter impliedly acquitted the defendant of mur-

131 Miss.—13

der. It also impliedly held that he was not innocent, or, in other words, was not acquitted. The implication of noninnocence flows just as logically and effectively from a verdict of conviction of manslaughter as does the acquittal of murder by such implication. To hold that an appellant can appeal and set aside a judgment of conviction of manslaughter and annul the verdict upon which it is entered, and upon which no other judgment could be entered, is to leave the shadow without the substance; to leave the implied and remove the actual thing upon which the implication is based. If the verdict convicting of manslaughter is destroyed, it is difficult for the reasoning mind to see how any implied verdict or judgment can exist, and the use of the word "actual" in the Constitution of 1890 necessarily negatives any verdict by implication or any judgment by implication from such verdict. The word "actual" deals with the real, the substance of things, and meant a real, sure-enough acquittal, or a real, sure-enough conviction on the merits of the case. In such case implied or constructive acquittals afford no protection.

These decisions under the former Constitutions should not be considered as authorities under the present Constitution, and this is the first time that this question has been fairly presented to the court for decision. In nearly all of the states the constitutional provision is either identical or similar in its language to our constitutional provision against double jeopardy before the Constitution of 1890, and almost identical with the provision against double jeopardy in the United States Constitution. It seems to me that it is too clear for argument that a defendant should not be privileged to set aside a judgment and verdict on the part which goes against him, and annul a trial and conviction, and escape being retried on the original charge when the verdict and judgment upon which he was convicted was annulled at his instance, he has not been in jeopardy because such judgment and trial have been declared illegal. The true rule, as I believe, is stated in

8 Ruling Case Law, p. 161, par. 153, under the heading of "Criminal Law," which reads as follows:

"153. *Conviction of Lower Degree of Crime as Acquittal of Higher Degrees.*—A question that has given rise to two well-defined rules is whether a conviction of a lower degree of a crime is a complete acquittal of the higher degrees in the sense of 'twice in jeopardy' rule, so that, if a new trial is granted, it must be limited to the lower degree of which the defendant was previously convicted. One line of authorities answers this question in the negative and holds that on the new trial the defendant may be tried again for the crime as charged in the indictment, and that he may be convicted of any degree of such crime just as if there had been no previous trial. The reasons given for this rule are that the defendant cannot voluntarily set aside the verdict and also hold to it. A verdict cannot at the same time be of force and not of force. The verdict of guilty is single. The defendant cannot divide it into that which pleases him and that which does not. The positive fact is the verdict of guilty of one offense; and the negative implication from that finding is not guilty of the other offense. It is not easy to see how the positive finding which furnishes the sole basis for the negative implication can be destroyed and set aside by the voluntary action of the accused, and yet leave the implication to stand alone without a basis. To sustain a plea of former acquittal, there must be a sustaining record of an acquittal; and if a verdict of guilty of a lesser offense operates as a record of acquittal of the greater, when it is set aside at the instance of the accused it is certainly no longer a subsisting record of conviction. The courts holding this view do not agree that the defendant has the right to limit his waiver as to jeopardy when he appeals from a judgment against him. As the judgment stands before he appeals, it is a complete bar to any further prosecution for the offense set forth in the indictment, or for any lesser degree thereof. No power can wrest from him the right so to use that judgment, but, if he chooses to appeal from it, and to

ask for its reversal; he thereby waives, if successful, his right to avail himself of the former acquittal of the greater offense, contained in the judgment which he has himself procured to be reversed."

The principle is also well stated by Justice STORY in Story on Constitution (4th Ed.) vol. 2, par. 1787, as follows:

"The meaning of it is, that a party shall not be tried a second time for the same offense after he has once been convicted or acquitted of the offense charged by the verdict of a jury, and judgment has passed thereon for or against him. But it does not mean that he shall not be tried for the offense a second time if the jury have been discharged without giving any verdict; or if, having given a verdict, judgment has been arrested upon it, or a new trial has been granted in his favor; for in such case his life or limb cannot judicially be said to have been put in jeopardy."

A terse and unconditional statement of the general rule is laid down in 12 Corpus Juris, p. 1204, par. 973, as follows:

"But a defendant who has been indicted for a particular offense and convicted of a lesser offense may, on a new trial obtained on his own motion, be again tried for the greater offense."

Among the cases holding that, if the defendant appeals from a conviction of the lower crime, he thereby waives the implied acquittal on the higher crime, and that, if reversed, his position is as if no trial had been had, are: *Trono* v. *U. S.*, 199 U. S. 521, 26 Sup. Ct. 121, 50 L. Ed. 292, 4 Ann. Cas. 773; *U. S.* v. *Gonzales* (D. C.), 206 Fed. 239; *Brantley* v. *State*, 132 Ga. 573, 64 S. E. 676, 22 L. R. A. (N. S.) 959, 131 Am. St. Rep. 218, 16 Ann. Cas. 1203; *Id.* 217 U. S. 284, 30 Sup. Ct. 514, 54 L. Ed. 768; *Perdue* v. *State*, 134 Ga. 300, 67 S. E. 810; *State* v. *Matthews*, 142 N. C. 621, 58 S. E. 342, which expressly overrules former holdings and follows *Trono* v. *U. S.*, *supra*; *State* v. *Billings*, 140 Mo. 193, 41 S. W. 778; *State* v. *Ash*, 68 Wash. 194, 122

Pac. 995, 39 L. R. A. (N. S.) 611; *State* v. *Bradley,* 67 Vt. 465, 32 Atl. 238; *Briggs* v. *Commonwealth,* 82 Va. 554; *Bohanan* v. *State,* 18 Neb. 57, 24 N. W. 390, 53 Am. Rep. 791; *State* v. *Behcimer,* 20 Ohio St. 572; 4 Ann. Cas. 773; 14 Am. Rep. 752; *Gibson* v. *Somers,* 31 Nev. 531, 103 Pac. 1073, 24 L. R. A. (N. S.) 504, 135 Am. St. Rep. 700; *State* v. *Morrison,* 67 Kan. 144, 72 Pac. 554; *Young* v. *People,* 54 Colo. 293, 130 Pac. 1011; *State* v. *Gillis,* 73 S. C. 318, 53 S. E. 487, 5 L. R. A. (N. S.) 571, 114 Am. St. Rep. 95, 6 Ann. Cas. 993; *Veatch* v. *State,* 60 Ind. 291; *State* v. *Kessler,* 15 Utah, 142, 49 Pac. 293, 62 Am. St. Rep. 911; *Turner* v. *Territory,* 15 Okl. 557, 82 Pac. 650; *People* v. *Palmer,* 109 N. Y. 413, 17 N. E. 213, 4 Am. St. Rep. 477; *State* v. *Arnold,* 83 Ky. 1, 4 Am. St. Rep. 114.

In the case of *Trono* v. *U. S.,* 199 U. S. 521, 26 Sup. Ct. 121, 50 L. Ed. 292, we find the rule clearly and forcibly stated through Justice PECKHAM in the following language:

"In our opinion the better doctrine is that which does not limit the court or jury, upon a new trial, to a consideration of the question of guilt of the lower offense of which the accused was convicted on the first trial, but that the reversal of the judgment of conviction opens up the whole controversy and acts upon the original judgment as if it had never been. The accused, by his own action, has obtained a reversal of the whole judgment, and we see no reason why he should not, upon a new trial, be proceeded against as if no trial had previously taken place. We do not agree to the view that the accused has the right to limit his waiver as to jeopardy, when he appeals from a judgment against him. As the judgment stands before he appeals, it is a complete bar to any further prosecution for the offense set forth in the indictment, or of any lesser degree thereof. No power can wrest from him the right to so use that judgment, but if he chooses to appeal from it, and to ask for its reversal, he thereby waives, if successful, his right to avail himself of the former acquittal of

the greater offense, contained in the judgment which he has himself procured to be reversed. . . .

"When the first trial is entered upon he is then put in jeopardy within the meaning of the phrase, and yet it has been held, as late as *United States* v. *Ball,* 163 U. S. 662, 671, 41 L. Ed. 300, 303, 16 Sup. Ct. Rep. 1192 (and nobody now doubts it), that if the judgment of conviction be reversed on his own appeal, he cannot avail himself of the once in jeopardy provision as a bar to a new trial of the offense of which he was convicted. And this is generally put upon the ground that by appeal he waives his right to the plea, and asks the court to award him a new trial, although its effect will be, if granted, that he will be again tried for the offense of which he has been once convicted. This holding shows that there can be a waiver of the defense by reason of the action of the accused. As there is, therefore, a waiver in any event, and the question is as to its extent (that is, how far the accused by his own action may be deemed to have waived his right), it seems much more rational and in better accord with the proper administration of the criminal law to hold that, by appealing, the accused waives the right to thereafter plead once in jeopardy, when he has obtained a reversal of the judgment, even as to that part of it which acquitted him of the higher while convicting him of the lower offense. When at his own request he has obtained a new trial, he must take the burden with the benefit, and go back for a new trial of the whole case. It does not appear to us to be a practice founded on solid reason to permit such a limited waiver by an accused party, while himself asking for a reversal of the judgment."

Likewise, in the case of *State* v. *Ash,* 68 Wash. 194, 122 Pac. 995, 39 L. R. A. (N. S.) 611, it was held that the reversal for a new trial upon the defendant's appeal from a conviction of manslaughter upon a trial of murder subjects him to a retrial on the original accusation. After quoting with approval from the *Trono Case, supra,* the court used in part the following language:

"This reasoning is to our minds so cogent that we do not deem it profitable to further extend this opinion by enlarging upon it other than to say it preserves all the constitutional and other rights of both parties to a criminal trial, the state and the accused. The announcement of this rule may disturb the guilty who seek through the intricate mazes of technical and refined subtleties to escape punishment for their evil deeds, as in this case, where to take the contrary view would mean that a murderer who admits his crime, and whose only regret is that he was apprehended before his lust for killing was fully satisfied, as he sought a second victim, would be left free to pursue his criminal intent until he had added other victims to his score. The court should give to all persons accused of crime the benefit of all the law that wisdom has created to shield the innocent from false accusation, but they only bring themselves into ridicule when they seek, through meaningless technicalities and hair-splitting distinctions, to build up a protecting wall behind which the guilty may avoid the penalty of their misdeeds. It is to be deplored that juries will sometimes so forget their sworn duty as to refuse to hold up violators of the law to the full measure of their misdeeds. Courts should not aid in this miscarriage of justice by creating technical and subtle distinctions in the law, and thus enable the guilty to altogether escape. We cannot control the verdicts of juries in their failure to make true deliverance between the state and the criminal, but we can refuse to extend the farce so as to make it operate as an absolute discharge. Believing that a new trial to one found guilty of a lesser offense should, on his appeal, be held a new trial upon all offenses included within the charge that find sustaining facts in the evidence, we so hold, and adopt such rule for our future guidance. It may not be supported by the greater number of adjudicated cases, but it appeals to us as based upon the best reasoning and soundest judgment. It follows that *State* v. *Murphy,* . . . and other cases expressing contrary views, are hereby overruled."

The above cases cited have been analyzed and quoted from at length in the masterly brief of the assistant attorney-general in the Strickland case. I regret that I am not able to set out in full these several quotations.

The Reporter is requested to abstract this brief of the assistant attorney-general on point 4 and 5, as well as on the proposition dealt with in the majority opinion.

I invite the careful consideration of the cases herein referred to because I cannot see how we will avoid dealing with the matter subsequently in view of the fact that the court has changed its position a number of times and in view of the fact that the case of *Virgil* v *State,* 63 Miss. 317, is left unaffected by the majority opinion. In my opinion we are warranted by the section of the Constitution above quoted in accepting the doctrine of the United States supreme court announced in *Trono* v. *United States,* 199 U. S. 521, 26 Sup. Ct. 121, 50 L. Ed. 292, which seems to me to be thoroughly sound on its reasoning, and is from the highest judicial court of the country, and as such entitled to great respect. Besides, some states since this decision by the United States supreme court have changed their position, and adopted that decision for their future decision. See specially with reference to this case the case of *State* v. *Ash,* 68 Wash. 194, 122 Pac. 995, 39 L. R. A. (N. S.) 611.

I can see how the rights of a party on trial may be prejudiced by injecting the issue of manslaughter, inviting a middle ground for the jury between the contentions of the respective parties by which juries may be induced to compromise their opinions and convictions, to the hurt of the defendant.

I am authorized to say that Judge ANDERSON concurs in my construction of section 22 of the Constitution of Mississippi of 1890, and that thereunder, when a conviction of manslaughter is reversed, the new trial should be on the original charge in the indictment.