CARTER *v.* STATE.*

(Division B.   Oct. 8, 1928.)

[118 So. 369.   No. 27270.]

44

*Corpus Juris-Cyc. References: Criminal Law, 17CJ, section 3460, p. 168, n. 93; Homicide, 30CJ, section 529, p. 285, n. 38; section 561, p. 316, n. 68; On .proof of *corpus delicti* in homicide, see annotation in 68 L. R. A. 33; 7 R. C. L. 774; 4 R. C. L. Supp. 497.

*Geo. L. Teat* and *M. Ney Williams,* for appellant.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

ETHRIDGE, P. J. The appellant was indicted for murder, and convicted of manslaughter, in the circuit court of the Second district of Hinds county, for the killing of Graves Woodruff, and sentenced to a term of eight years in the state penitentiary. The killing occurred in the town of Edwards in December, 1925. The circumstances of the killing, as shown by witnesses, are as follows:

The appellant, accompanied by a woman, was in the town of Edwards on the day the killing occurred. Appellant introduced the woman to one Frank Smith as his first wife, and, upon Smith's starting to shake hands with the woman, the appellant said, "No hand shaking here," and Smith backed away. The deceased, standing back of Smith, then stepped up where the woman was, and said, "I shakes all women's hands," and took her by the hands, and, according to the testimony of one of the witnesses, took hold of her in an improper way. The appellant remonstrated with the deceased, and some words

passed between them, after which they separated. Shortly afterwards, in front of a store in the town, the appellant came up where the deceased and others were standing, and, according to the state's witnesses, without saying anything to the deceased, cut him on the neck. A struggle between them followed, and the witness Smith seized the appellant, holding his hand in which he held the knife. According to the state's evidence, the deceased "hollered" to some one to hold the appellant. During the struggle between the appellant and the deceased, the appellant cut and stabbed the deceased in the stomach and intestines. Graves, the deceased, died a few days thereafter.

The evidence in behalf of the appellant tended to show misconduct on the part of the deceased, and a threat of using a weapon, at the scene of the first difficulty.

The appellant argues three grounds for the reversal of the case: First, that the court erred in refusing the change of venue asked for by him; second, that the evidence is insufficient to show the corpus delicti; and, third, the evidence is insufficient to support the verdict of the jury convicting the appellant of manslaughter.

When the case was called for trial, the appellant filed a motion for change of venue, on the ground that he could not get a fair and impartial trial in the district in which the offense had been committed, because of the prejudgment of the case and the hostility of the public mind. The application for change of venue was accompanied by an affidavit made by two persons, averring the existence, in their belief, of such prejudgment and hostility as would prevent the defendant from getting a fair trial. The order of the court overruling the motion for such change of venue recites:

"And the court, having heard the testimony of the witnesses for the state and for the defendant, and having considered the same, doth order and adjudge that said

motion be, and the same is hereby, overruled, to which ruling the defendant excepted.''

The record does not contain any evidence of witnesses introduced on the hearing of the motion for change of venue, and we must assume that the evidence warranted the trial judge in overruling it. After this motion was overruled, the appellant then made a motion for a special venire to be drawn from the county at large, instead of from the Second district alone, and this motion was by the court sustained, and the venire so drawn, many of the veniremen, as shown by the list in the record, being from the city of Jackson, in the First district of Hinds county. There was no evidence of the *voir dire* examination of the veniremen, and we must assume that they were free from legal objection; consequently, the first assignment of error is without merit.

It is next contended that the *corpus delicti* was not established, because none of the witnesses testified that they saw the deceased at the time of his death, or after he died. The brother of the deceased testified as to the nature of the deceased's wounds, showing that he was cut in the stomach and the intestines, and on his neck. He was then asked these questions:

"Q. How long did he live after he was cut? A. He died that Tuesday. Q. The following Tuesday? A. Yes, sir. Q. What caused his death? (Objected to, unless he knows.) Q. He died from the effect of the cut? A. Yes, sir. (Objected to as leading; objection sustained.) Q. Did he have any other injury on his body, other than the cut? A. No, sir. Q. Was he in good health up to the time he was cut? A. Yes, sir. Q. And lived from Saturday till Tuesday morning? A. Yes, sir. Q. About what time Tuesday did he die? A. That afternoon.''

A colored physician, living at Edwards, testified that he dressed the wounds of the deceased on the evening of the cutting, and sent the deceased to the hospital at

Vicksburg, and that, in his opinion as a physician, the cut in deceased's stomach and intestines caused his death. There was no testimony tending to show that he was living at the time of the trial, or that he was living at any time within a year after the cutting. We think the testimony offered is sufficient to show that the said party cut died, and that his death was caused by the cut inflicted by the appellant; consequently, there is no merit in this assignment of error.

On the whole case, we think the evidence is ample to sustain the verdict of the jury for the state, and that the appellant could well have been convicted of murder. There is an assignment challenging the right of the state to procure an instruction of manslaughter, but we have on several occasions held that, where the evidence justified the verdict of murder and the jury rendered a verdict of manslaughter, the appellant could not complain of the giving of an instruction for manslaughter, as it was beneficial, and not prejudicial. *Taylor* v. *State,* 148 Miss. 713, 114 So. 823; *Calicoat* v. *State,* 131 Miss. 169, 95 So. 318.

The judgment of the court below will therefore be affirmed.

*Affirmed.*