## HARRIS v. STATE.

(Division A. Nov. 18, 1929.)

[129 So. 493. No. 28019.]

**J. M. Talbot,** of Clarksdale, for appellant.

**Forrest B. Jackson,** Assistant Attorney-General, for the state.

**McGowen, J.,** delivered the opinion of the court.

On an indictment for murder appellant was convicted by the jury of manslaughter and sentenced by the court below to serve a term of twenty years in the state penitentiary.

The indictment charged murder in the killing of George Gaden. The killing is alleged to have occurred on a Saturday night or Sunday morning at a "supper"—a dice game interspersed with music and dancing. There was

a difficulty between George Gaden and the appellant, Harris, after which Harris left the room in which a "crap game" had been in progress and then, according to the state's evidence, some ten or fifteen minutes later he came back in the room with an ax and "chopped" the back of Gaden's head making a gash four or five inches long and penetrating the skull. The state's evidence was to the effect that the blow was struck from the rear and at a time when Gaden did not know that his adversary was about to strike him. The appellant's evidence was to the effect that he struck the blow with the ax in self-defense. This occurred about four o'clock Sunday morning. Gaden stood up for some minutes, walked into another room and fell. Dr. Shannon attended Gaden from that time until Tuesday following when Gaden was put upon a train by the doctor in the care of Frank Morris and carried to Vicksburg and placed in some hospital. The state undertook to show that this same man died about four days later as a result of the wound inflicted with the ax by the appellant.

The main assignment of error, and the only one we shall consider, is that the state failed to prove the corpus delicti in this case. In other words, that the proof taken as a whole did not show that George Gaden, the man who was assaulted by the appellant with an ax, was dead at the time of the trial.

According to this record no one who ever knew Gaden ever saw him any more after he was left in some hospital in Vicksburg by Frank Morris, who testified on direct examination that he left Gaden at the State Charity Hospital; but on cross-examination admitted that he did not know whether or not he left Gaden at the State Charity Hospital or some other hospital. He did not give the name of any individual to whom he delivered the unconscious wounded man. The only other evidence in this record that George Gaden is dead is that of Marion

Wheeler who said that he lived at Vicksburg Charity Hospital, and then there occurs this evidence:

"Q. Did you know George Gaden, in his lifetime? A. Didn't know him only until they brought him to the hospital.

"Q. Well, did you know him then? A. Yes, sir.

"Q. What was his condition when you saw him there at the hospital? A. Well, he was, his head was bursted on the back of his head, right here, when they brought him in there.

"Q. Well, was he conscious or unconscious, what was his general condition? A. He was unconscious.

"Q. Did he live or die? A. He died. . . .

"Q. Did you see his body, when he was dead? A. Yes, sir; I seed his body when it was dead. . . .

"Q. Do you know how long he had been there, before he died? A. About four days. . . .

"Q. Did he, during the time that he was there, and before his death, ever rally and seem to be recovering, or not? A. No, sir."

On cross-examination he said he held the man in his bed; that he was in a room with a number of other patients, he (Wheeler) being an attendant at the hospital. He further said that he never spoke to this man who died, and likewise the man never spoke to him. These questions and answers are quoted verbatim:

"Q. You never saw this man, before, in your life, until he was put in your room, there in the hospital? A. No, sir.

"Q. And didn't even know what his name was? A. No, sir.

"Q. Didn't even know who brought him there? A. No, sir; I don't know."

And he further said that the man who brought the wounded man there did not state the name of the patient to him. He said that the man who died was a man about

sixty-five years of age, and then after a further description said: "Well, me somewhat his size, he didn't look to be as tall as I am, but it was a small, sized, medium man." "He was a dark colored man." And he testified that he never saw the man any more after he carried him to the "dead house." He did not know to whom this man, about whom he was testifying, was delivered at the hospital, nor by whom delivered, nor from whence he came, nor did he state what month or year or day of the month the death occurred.

It could be gathered from the record that this death must have occurred some time in the year 1928. The description of the man is entirely too meager upon which to base a verdict. There was no effort on the part of the state to introduce any of the officials, physicians, or the receiving clerk of the hospital in order to show the identity of this man who died in the care of the witness whose testimony we have set forth as above.

The attorney-general, in his brief, argues that Dr. Shannon testified that Marion Wheeler waited on and was with George Gaden prior to and at the time of his death, etc. We have read again and again Dr. Shannon's testimony, and no such evidence appears in this record. In other words, it is not shown by any witness who knew George Gaden that he was the same man who came into Marion Wheeler's custody or care in an unconscious condition. The state is required to prove the corpus delicti beyond a reasonable doubt, and the proof must consist of two things before the corpus delicti is so established—"first, certain facts forming its basis; and secondly, the existence of criminal agency as the cause of them." As to the second, there is no doubt but that the appellant was the party who struck George Gaden in the head, but there is no proof here establishing the fact that George Gaden is dead, and, so far as this record is concerned, he may still be alive, and there is no evidence

upon which the jury could reasonably conclude that it had been established beyond a reasonable doubt that Gaden was dead. This must appear. No presumptions on this point can be assumed against the defendant, but every presumption is in his favor, and this important point cannot be left to conjecture or speculation. There is no necessity for relaxing this rule which has been in force in this state since it has had organized courts.

We read in the books of many cases where men have been convicted and paid the penalty for the crime of murder, and afterwards the party alleged to have been slain appears alive beyond controversy. If, in fact, the body of George Gaden was delivered to the Vicksburg Charity Hospital then that matter was susceptible of easy ascertainment, and the delivery of an unconscious body of an unknown man is not sufficient evidence upon which to base a judgment for the crime of murder or manslaughter.

In the case of Stringfellow v. State, 26 Miss. 157, 59 Am. Dec. 247, this court held that the confessions of the prisoner out of court even that he did kill a certain man for whose murder he was indicted was not sufficient to establish the corpus delicti. In Pitts v. State, 43 Miss. 472, the court announces the necessary constituents of corpus delicti, as indicated by us above, and further said that, in a case of homicide, the corpus delicti consists of two substantial fundamental facts: "1st. The fact of the death of the deceased [evidently the court meant the death of the party charged to have been slain in the indictment].; and 2d. The fact of the existence of criminal agency as the cause of the death. The first of these constituents is always required to be proved either by direct testimony, or by presumptive evidence of the strongest kind. . . . The corpus delicti must be proved beyond a reasonable doubt by evidence other

than such extrajudicial confessions." There is no confession in this case that George Gaden was dead.

The attorney-general argues that, because the doctor testified that the wound inflicted by the appellant was one which would result fatally, this is sufficient proof of the corpus delicti. This is obviously unsound. The attorney-general presents the case of Carter v. State, 152 Miss. 43, 118 So. 369, but the case there under consideration is not here involved for the reason that the evidence set forth in the opinion shows that the party, Graves Woodruff, died on a certain Tuesday.

Appellant made a motion to exclude the evidence on the ground that the corpus delicti had not been shown, but the motion was overruled. In this state of the record, and because of a missing link in the evidence, this case must be reversed, but we have concluded that justice demands that this case be remanded for another trial, it being clear to us that the officials of the hospital to which Gaden was delivered can be brought in, and the records of the hospital will perhaps establish the identity of the man who died, and the date of his death, whether before this crime was committed or not, as the present record does not show that the man who died in Vicksburg, about whom Marion Wheeler testified, was Gaden. For all we can say, this man may have been in the "dead house" at or before the time this crime is alleged to have been committed.

Reversed and remanded.